## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**No. 04-10644-MEL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**LINDA MELLEN,**
      **Plaintiff,**

v.

**TRUSTEES OF BOSTON**
**UNIVERSITY and FRANCES**
**A. DROLETTE,**
      **Defendants.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANT UNIVERSITY – PLANTIFF'S REQUEST NO. 5

This Memorandum is submitted in support of plaintiff's Motion to compel those

University documents that are responsive to her First Request for Production of

Documents, Request No. 5. Copies of plaintiff's First Request and defendants' Response

are attached at Tabs 1 and 2 hereto, respectively.[1]

## I. SUMMARY OF PLAINTIFF'S CLAIMS AND APPLICABLE LEGAL ANALYSIS, TO ESTABLISH RELEVANCE OF DOCUMENTS

Starting in August 2003, with defendants' approval, plaintiff Linda Mellen took

intermittent family leave to care for her disabled mother. On November 19, 2003,

defendants terminated plaintiff's 26+ year employment at the University, solely because

---

[1]    Request No. 5 seeks "[a]ll documents relating to or otherwise identifying those
University employees who were either terminated or determined by the University to
have resigned because of their failure to return to their University employment following
their extended leave, including but not limited to leave taken pursuant to the FMLA
and/or SNLA."

she did not report to work that day.[2]  Plaintiff argues she was privileged under Federal

and state law to be on family leave on November 19, 2003, whereas defendants contend

that her absence on that single day effectively represented a resignation from University

employment.[3]

Plaintiff alleges that defendants violated her rights under the Family and Medical

Leave Act of 1993, 29 U.S.C. ss. 2601 *et seq*. ("FMLA"), and Massachusetts' Small

Necessities Leave Act, M.G.L. ch. 149, s. 52D ("SNLA").[4]  These violations involve

plaintiff's substantive (or "prescriptive) FMLA rights, and also the FMLA's anti-

retaliation (or "proscriptive") requirements.  With respect to the latter, the FMLA

prohibits employers from discriminating or retaliating against employees who invoke

their FMLA rights. *Hodgens v. General Dynamics*, 144 F.3d 151, 160 (1st Cir. 1999).

*Accord* 29 C.F.R. s. 825.220 ("[a]n employer is prohibited from discriminating against

employees . . . who have used FMLA leave"); 29 C.F.R. s. 825.220(c)(employers may

---

[2]     The undisputed evidence, when it is presented either in summary judgment
submissions or at trial, will establish that plaintiff Mellen had been an employee in good
standing at the University for 26+ years, that she had no attendance problems in her
record, and that she had an exemplary work performance record. *Accord Strate v.
Midwest Bankcentre, Inc.,* 398 F.3d 1011, 1020 (8th Cir. 2005)(an employee's
unblemished, long-term employment history is relevant to, and may cast 'genuine doubt'
upon, the [employer's] stated reason for terminating her").

[3]     "A forced resignation is certainly an adverse employment action akin to
termination." *Jennings v. Mid-American Energy*, 282 F.Supp.2d 954, 962 (S.D.Iowa
2003).

[4]     The SNLA is roughly Massachusetts' analogue to the FMLA, and mandates 72
hours of employee leave for family-related purposes beyond that afforded by the FMLA.
*See* M.G.L. ch. 149, s. 52D.  The SNLA is construed consistently with the FMLA. *See
Attorney General's Advisory,* No. 98/1 ("the Attorney General intends to look for
guidance to the federal interpretation of [the relevant FMLA] provisions which are
incorporated into the [SNLA]").  For this reason, the FMLA/SNLA will be identified in
this discussion as "FMLA".

2

not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions").

Absent direct evidence of retaliation or discrimination, proscriptive violations may be established in accordance with the *McDonnell Douglas* analysis, which courts utilize in "analyzing the tricky issue of motivation." *Id. See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-806, 93 S.Ct. 1817 (1973). To establish a *prima facie* case of discrimination or retaliation based on the *McDonnell Douglas* framework, plaintiff must establish that (1) she availed herself of a protected right under the FMLA/SNLA; (2) she was adversely affected by an employment decision; and either (3)(a) she was treated less favorably than an employee who had not requested leave under the FMLA, or (3)(b) the adverse decision was made because she took FMLA leave. *See Hunt v. Rapides Heathcare System, LLC*, 277 F.3d 757, 768 (5th Cir. 2001). *See also Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997); *Hodgens v. General Dynamics, supra* at 161 (both stressing the causal connection between the employee's protected activity and the employer's adverse action).

Should defendants articulate a legitimate nondiscriminatory reason for terminating plaintiff, the *McDonnell Douglas* analysis requires the plaintiff "to rebut that evidence and attempt to establish that the purported non-discriminatory reason is a pretext, and that [her] termination was motivated, at least in part, to deny [her] rights under FMLA." *See Tambash v. St. Bonaventure University*, 2004 U.S.Dist.LEXIS 19914, *38 (W.D.N.Y. 2004). *See also Hodgens v. General Dynamics, supra* at 166. "Pretext" may be established by showing that there are,

> such weaknesses, implausibilities, inconsistencies, incoherencies, or
> contradictions in the employer's proffered legitimate reasons for its action that a

> reasonable factfinder could rationally find them unworthy of credence and . . .
> infer that the employer did not act for the asserted non-discriminatory reasons.

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997), *quoted with approval Hodgens v. General Dynamics Corp., supra* at 168. The Court may also consider other factors, including the defendants' "[d]epartures from the normal procedural sequence". *See Reno v. Bossier Parish*, 520 U.S. 471, 487, 117 S.Ct. 1491, 1503 (1977), *quoted with approval Hodgens v. General Dynamics Corp., supra* at 168.

The "inconsistencies" and "contradictions" that may be found in defendants' management of employees on leave, including the administration of employees' return to work, would tend to establish that defendants treated plaintiff, an FMLA beneficiary, more harshly than employees absent for non-FMLA reasons. Such disparate treatment against FMLA beneficiaries is most telling when based upon a "comparative analysis of similarly situated individuals." *See Cone v. Longmont United Hospital Ass'n,* 14 F.3d 526, 532 (10th Cir. 1994)(evidence of disparate treatment against a protected class of employees [such as FMLA beneficiaries], is relevant if based upon a "comparative analysis of similarly situated individuals"). *Accord Rogers v. City of Chicago*, 320 F.3d 748, 754-55 (7th Cir. 2003), quoting *Stone v. City of Indianapolis*, 281 F.3d 640 (7th Cir. 2002)(to establish a *prima facie* case of FMLA retaliation, a plaintiff must show that after engaging in protected conduct only he, and not any similarly situated employee who did not engage in protected conduct, was subjected to an adverse employment action).[5]

---

[5]    "Similarly situated" should not be interpreted so strictly that it forces plaintiff into a class of one. Rather, in the present context, "similarly situated" means all University employees in good standing, without a history of unauthorized attendance. *See Hodgens v. General Dynamics, supra* ("similarly situated" in the context of employees laid off from employment according to employer's performance rankings means those employees

4

## II. THE DISCOVERABILITY OF THE UNIVERSITY'S DOCUMENTS: The University's Treatment of Other Employees on Leave

The comparative evidence that Request No. 5 solicits may tend to establish that

plaintiff Mellen was treated more harshly than University employees who failed to return

to work as expected after non-FMLA leave. If this is the case, then plaintiff gains

additional evidence that defendants wrongly discriminated and/or retaliated against her

because of her use of FMLA leave.[6]

On this point, the deposition testimony of the University's Director of Personnel,

George T. Snowdon, is telling. After testifying that he had been involved with the

termination of "probably more than fifty [University employees]" since 1996, the

following exchange took place:

> Q: How many employees, BU employees, have you been involved with in
> connection with their termination who had more than ten years['] experience, who

---

in the same or a similar job title or pay grade to plaintiff). *Accord Vargas v.
Globetrotters Eng'g Corp.*, 4 F. Supp. 2d 780 (N.D. Ill. 1998) (holding that a field
secretary had a viable FMLA claim where she contended that a similarly situated and
similarly skilled field secretary was given a job by the company at about the same time
that her position was eliminated); *Skrjanc v. Great Lakes Power Service Company*, 272
F.3d 309 (6th Cir. 2001)(if plaintiff could show that employer normally gave employees
an opportunity to be considered for new jobs within the company when their positions are
eliminated, or that another employee who had not invoked FMLA rights was considered
for transfer, then plaintiff could raise a reasonable inference that he was treated
dissimilarly because he had invoked his rights under the FMLA).

[6]       The responsive documents would be relevant even if the other University
employees took family leave. For example, if employees out on family leave failed to
return to work on their expected return-to-work date, and they were not terminated, then
the documents will tend to establish that the University's termination of plaintiff was
inconsistent with its own family leave policies and understanding of the FMLA.

5

had no job deficiency or attendance issues in their personnel files, who were terminated for missing one day of work?"[7]

[Objection]

A: I can't recall any such instances off hand.

*See* Tab 3 hereto, excerpt of December 16, 2004 deposition of George T. Snowdon, p. 37,

lines 14-21. Similarly:

Q: Prior to the separation of Linda Mellen in November 2003, had you ever been involved in a termination of a BU employee who had an unblemished, long-term tenure at BU because that employee missed one day of work?

[Objection]

A: I don't recall.

*See* Tab 3, Snowdon deposition excerpt, p. 60, lines 10-15.

Mr. Snowdon further testified that University employees enjoyed various types of

employee leave (*e.g.*, vacation, sick, injury, maternity, sympathy, jury duty, and military).

*See* Tab 3, Snowden deposition excerpt, p. 42, line 22 – p. 44, line 1. The following

exchange then took place:

Q: On occasion – is it your experience, though, on occasion, that employees return to work later than their supervisors expected?

A: Yes.

Q: To your knowledge, understanding that you've been at BU since '92 and Director of Personnel since '96, how many Medical Campus employees have been terminated because they did not appear for work on the very first day they were expected to return from their authorized leave?

[Objection]

---

[7]     As noted in footnote 2 *infra*, at the time she was terminated for missing work on November 19, 2003, plaintiff had enjoyed 26+ years of exemplary employment with the defendant University, and had no attendance problems.

6

A: Although I can't cite the instances off hand, I believe that there have been occasions of that in the past.

Q: Any way to number, roughly or specifically, the number of occasions where employees have been terminated because they did not appear for work on the first day they were expected to return?

A: I believe there would be a handful or less.[8]

Q: And to your knowledge, did these employees have a previous history of taking unauthorized or unexcused leave from their employment?

A: I don't recall.

*See* Tab 3, p. 44, line 9 – p. 45, line 7.

Under *McDonnell Douglas* evidence of the comparatively harsh treatment of plaintiff suggested by Snowdon's testimony would support plaintiff's *prima facie* case as well as the pretext of defendants' asserted non-discriminatory purpose. *See* discussion *infra* at pp. 3-5. In sum, if plaintiff is able to establish that she would not have been terminated on November 19, 2003 had she been on other-than-FMLA leave up to that date, her claim of retaliatory discharge is established. *Accord Arban v. West Publishing Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

For these reasons, the University should be compelled to produce all documents responsive to plaintiff's Request No. 5.

---

[8]     Snowdon previously testified that the University's Medical Campus employed approximately 3,500 employees, *see* Tab 3 *infra*, at p. 42, lines 14-16, which indicates that the University's termination of plaintiff for missing one day of work was an extraordinarily unusual action.

7

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above
document was served upon the attorney of
record for each other party by mail (by hand)
on_____June 28, 2005_____

Signed:_____

Respectfully submitted,
Linda Mellen, by her attorney,


Harry C. Beach BBO#547893
**Law Offices of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
Office: 781.255.5573
Cell: 617.968.4531
**AttyBeach@aol.com** *or*
**HBeach@HarryBeach.com**

**June 27, 2005**

## LOCAL RULE 37.1 CERTIFICATION OF COUNSEL

I, Harry C. Beach, counsel of record for the plaintiff Linda Mellen, in accordance
with Local Rule 37.1 certify to the following:

I have conferred at length with defendants' counsel, Crystal D. Talley, with
respect to the issues arising from defendants' response to my client's request for
production of documents, specifically, Requests Nos. 1, 2, 5, and 7. We have conferred
over the course of several months by phone, in person, by email, and by letters, and have
been successful in resolving our differences regarding plaintiff's document Requests No.
1, 2, and 7, relating to the discoverability of "advice of counsel"/good faith
documentation in defendants' possession (the dispute was resolved by defendants'
representing that they will not assert an "advice of counsel" defense).

Despite these efforts, defendants continue to resist disclosure of documents
relating to University employees who were disciplined for not returning to work on their
first return-to-work date after taking leave, as last confirmed this day in a telephone
conference between Attorney Talley and myself.


Harry C. Beach BBO#547893

*June 27, 2005*