Volume:    I
Pages:    157
Exhibits: 37

COMMONWEALTH OF MASSACHUSETTS

04-10644-MEL

* * * * * * * * * * * * * * * * * * *
                                    *
Linda Mellen,                       *
                Plaintiff           *
                                    *
vs.                                 *
                                    *
Trustees of Boston University       *
and Frances A. Drolette,            *
                Defendant.          *
                                    *
* * * * * * * * * * * * * * * * * *


          DEPOSITION of George T. Snowdon, a witness

     called on behalf of the plaintiff, taken pursuant to

     the Massachusetts Rules of Civil Procedure, before

     Shawna Delia Hoban, a Professional Court Reporter and

     Notary Public in and for the Commonwealth of

     Massachusetts, at the offices of Harry C. Beach, on

     Thursday, December 16, 2004, commencing at 10:02 a.m.


                    Shawna Delia Hoban
          P.O. Box 364, Westwood, MA  02090
                    508.212.3553

2

A P P E A R A N C E S


Harry C. Beach, Esquire
Law Offices of Harry C. Beach
30 Walpole Street
Norwood, MA   02062

        Counsel for the Plaintiff



Crystal D. Talley
Associate General Counsel
Office of the General Counsel
Boston University
125 Bay State Road
Boston, MA   02215

        Counsel for the Defendant

7

1                    George T. Snowdon, SWORN

2

3   DIRECT EXAMINATION BY MR. BEACH:

4           MR. BEACH:   Could you state your name for the

5       record, please?

6           MR. SNOWDON:   George Snowdon.

7           MR. BEACH:   And your date of birth?

8           MR. SNOWDON:   September 19, 1953.

9           MR. BEACH:   And the town of your residence right

10      now?

11          MR. SNOWDON:   I live in Watertown, Massachusetts.

12          MR. BEACH:   Do you have any plans to move out of

13      state in the next eighteen months or so?

14          MR. SNOWDON:   No.

15          MR. BEACH:   Mr. Snowdon, your counsel may have

16      already pointed this out to you or you may know it

17      from your own experience, but today is an opportunity

18      that the Federal Civil Procedures give me to ask you

19      certain questions under oath as they relate to the

20      allegations and offenses set out in the lawsuit before

21      us;   that is, Linda Mellen versus Trustees of BU and

22      Frances Drolette.

23          As you know, that action is pending in Federal

24      Court and today is the opportunity the rules allow me

37

1   Q.   Do you have any way to ball park for me today --

2         understanding that ball parks can be large, ball park

3         for me today the number of terminations you've been

4         involved with since 1996?

5   A.   I cannot even venture a guess, sir.

6   Q.   Do you have any sense whether it's more or less than

7         ten?

8   A.   It would be more than ten.

9   Q.   And, again, I understand what you said but let me

10        press you just a little.  Do you have any sense

11        whether it's more or less than fifty?

12   A.   Probably more than fifty.

13   Q.   I'll leave it at that for now, understanding your

14        testimony.  How many employees, BU employees, have you

15        been involved with in connection with their

16        termination who had more than ten years experience,

17        who had no job deficiency or attendance issues in

18        their personnel files, who were terminated for missing

19        one day of work?

20           MS. TALLEY:  Objection.

21   A.   I can't recall any such instances off hand.

22   Q.   BU has a policy, Mr. Snowdon, doesn't it which applies

23        a three work-day grace period for unexcused absences?

24           MS. TALLEY:  Objection.

42

1       have resigned voluntarily from the University.

2    Q.    And is it your view, Mr. Snowdon, that Section 312.7

3          supersedes or nullifies 202.1?

4          MS. TALLEY:  Objection.

5    A.    As it relates to a person who is out on the Family

6          Medical Leave Act, yes.

7    Q.    Is there anything in the Personnel Manual here, sir,

8          which states or allows the reading that 312.7 trumps

9          202.1?

10         MS. TALLEY:  Objection.  You can answer.

11   A.    I am not aware of any specific provision that

12         addresses that.

13         MR. BEACH:  Can we go off the record a second?

14   Q.    Currently, sir, how many employees are at the Medical

15         Campus?

16   A.    Approximately thirty-five hundred.

17   Q.    And in that count do you include faculty?

18   A.    Yes, I do.

19   Q.    And was that roughly the same situation in 2003;  that

20         is, somewhere around thirty-five hundred?

21   A.    Yes.

22   Q.    And employees on the Medical Campus, they accrue

23         vacation leave as they continue to serve as employees;

24         is that correct?

43

```
 1   A.   Yes, they do.  Yes.

 2   Q.   And they accrue sick leave; is that correct?

 3   A.   Yes.

 4   Q.   And these employees, they routinely take vacation

 5        leave and sick leave and personal leave over the

 6        course of the year; don't they?

 7   A.   Yes.

 8   Q.   BU also recognizes other kinds of authorized absences;

 9        doesn't it?  Other than vacation, sick and personal?

10   A.   I'm not sure what you're referring to.

11   Q.   BU recognizes that sometimes employees are out on

12        authorized leave because of an on-the-job injury; is

13        that correct?

14   A.   Yes.

15   Q.   And sometimes employees are out of work because of

16        maternity leave for which they may get paid; is that

17        correct?

18   A.   Yes.

19   Q.   And sometimes employees are out on sympathy leave

20        under the rules of the Personnel Policy Manual; isn't

21        that correct?

22   A.   Yes.

23   Q.   Sometimes employees are out on jury duty or military

24        leave; is that correct?
```

44

```
 1  A.   Yes.

 2  Q.   And those are all, assuming the appropriate notice,

 3       authorized leaves of absences; isn't that correct?

 4  A.   Yes.

 5  Q.   And these employees, as a general matter on the

 6       Medical Campus, they return after their period of

 7       authorized leave;  isn't that correct?

 8  A.   Yes.

 9  Q.   On occasion -- is it your experience, though, on

10       occasion, that employees return to work later than

11       their supervisors expected?

12  A.   Yes.

13  Q.   To your knowledge, understanding that you've been at

14       BU since '92 and Director of Personnel since '96, how

15       many Medical Campus employees have been terminated

16       because they did not appear for work on the very first

17       day they were expected to return from their authorized

18       leave?

19            MS. TALLEY:  Objection.  You can answer.

20  A.   Although I can't cite the instances off hand, I

21       believe that there have been occasions of that in the

22       past.

23  Q.   Any way to number, roughly or specifically, the number

24       of occasions where employees have been terminated
```

45

1        because they did not appear for work on the first day

2        they were expected to return?

3   A.   I believe there would be a handful or less.

4   Q.   And to your knowledge, did these employees have a

5        previous history of taking unauthorized or unexcused

6        leave from their employment?

7   A.   I don't recall.

8   Q.   Prior to the letter that Ms. Drolette sent out on

9        November 20, 2003;  that is, Exhibit No. 3, what

10       investigation did your office conduct as to why Linda

11       Mellen did not appear for work on November 19?

12           MS. TALLEY:  Objection.  You can answer.

13  A.   We did not conduct any investigation.

14  Q.   And maybe investigation is an ambiguous word, but did

15       your office conduct or undertake any kind of inquiry

16       before this letter went out, Exhibit No. 3, as to why

17       Linda Mellen did not report to work on November 19?

18  A.   No.

19  Q.   Do you know whether Frances Drolette made any inquiry

20       before signing and sending Exhibit No. 3 as to why

21       Linda Mellen was not at work on November 19?

22  A.   I don't know.

23  Q.   Did you ever ask her whether she looked into why Linda

24       wasn't at work on the nineteenth?

60

1        employee to take leave under that law?

2             MS. TALLEY:  Objection.

3  A.   Yes.

4  Q.   Is it your understanding as well, Mr. Snowdon, that

5        the Family and Medical Leave Act requires an employee

6        to request, with reference to the FMLA, family leave?

7             MS. TALLEY:  Objection.  You can answer that if

8        you can.

9  A.   I don't know; I can't say.

10  Q.   Prior to the separation of Linda Mellen in November

11       2003, had you ever been involved in a termination of a

12       BU employee who had an unblemished, long-term tenure

13       at BU because that employee missed one day of work?

14           MS. TALLEY:  Objection.

15  A.   I don't recall.

16           MR. BEACH:  Let me know if you need to take a

17       break or stretch, Mr. Snowdon, and I'll just keep

18       pushing on.

19  Q.   If I could, sir, 308.1 of the Personnel Manual.  With

20       reference to 308.1, sir, on page forty-six, am I

21       correct in reading this that BU has a policy of twelve

22       authorized paid holidays to a normal work year?

23  A.   Yes.

24  Q.   And in 2003, BU added for that year the Daniel S.