UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04-10644-MEL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**LINDA MELLEN,**
   **Plaintiff,**

v.

**TRUSTEES OF BOSTON
UNIVERSITY and FRANCES
A. DROLETTE,**
   **Defendants.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CIVIL COMPLAINT

This action arises from defendants' violation of plaintiff's rights under the Family and Medical Leave Act (29 U.S.C. sec. 2601 *et seq.*), and the Small Necessities Leave Act (Massachusetts General Laws, ch. 149, s. 52D). In addition to their interference with various substantive mandates of these statutes, defendants wrongfully and illegally terminated plaintiff's employment and/or falsely accused plaintiff of resigning her employment in retaliation for her assertion and enjoyment of her right to family leave. Plaintiff seeks reinstatement, back pay, and related damages and remedies.

I.   **PARTIES**

(1) The plaintiff, Linda Mellen, is an adult citizen residing in Bourne, Barnstable County, Massachusetts. Plaintiff is a qualified "employee" for purposes of the Family and Medical Leave Act ("FMLA") and Massachusetts' Small Necessities Leave Act ("SNLA").

(2) The defendant, Trustees of Boston University, is a Massachusetts non-profit corporation having its principal place of business at 881 Commonwealth Avenue, Boston, Suffolk County, Massachusetts ("BU"). BU is an "employer" for purposes of the FMLA and SNLA.

(3) The defendant, Frances A. Drolette, is an adult citizen residing in Belmont, Middlesex County, Massachusetts. The defendant Drolette served at all relevant times as the Associate Dean for Finance and Administration, School of Public Health, Boston University. Drolette was the person who fired the plaintiff and/or falsely asserted that plaintiff had resigned; Drolette supervised and controlled plaintiff's work schedule and conditions of employment; Drolette had the authority to affect plaintiff's compensation; and she maintained employment records regarding plaintiff. Drolette is, therefore, an "employer" for purposes of the FMLA and SNLA.

## II.   JURISDICTION

(4) This Court may exercise subject matter jurisdiction over the counts (I-VII) arising under the Family and Medical Leave Act ("FMLA") pursuant to 28 U.S.C. sec. 1331 and 29 U.S.C. s. 2617, as this action is predicated upon, arises under, and creates a question of Federal law, namely, the FMLA, 29 U.S.C. ss. 2601 *et seq.*

(5) As more clearly appears below, the action under the Massachusetts Small Necessities Act ("SNLA"), which is alleged in Count VIII, is so related to the FMLA claims set out in Counts I-VII that the claims in combination form part of the same case or controversy for purposes of Article III of the United States Constitution.

(6) The SNLA claim set out in Count VIII neither raises a novel or complex issue of state law, nor substantially predominates over the FMLA claims alleged in Counts I-VII.

(7) There are no compelling reasons for the Court to decline jurisdiction over the SNLA claim alleged in Count VIII.

(8) This Court may exercise personal jurisdiction over the defendant Boston University in accordance with Massachusetts General Laws, ch. 223A, s. 3, in that Boston University, *inter alia*, is a resident of the Commonwealth of Massachusetts; has its principal place of business and transacts business in the Commonwealth; employed plaintiff within the Commonwealth; caused injury to plaintiff by acts and omissions occurring within the Commonwealth; and because plaintiff's cause of action arose therefrom.

(9) This Court may exercise personal jurisdiction over the defendant Drolette in accordance with Massachusetts General Laws, ch. 223A, s. 3, in that Drolette, *inter alia*, is a resident of the Commonwealth of Massachusetts; transacted business in the Commonwealth; caused injury to plaintiff by acts and omissions occurring within the Commonwealth; and because plaintiff's cause of action arose therefrom.

### III. ALLEGATIONS COMMON TO ALL COUNTS

(10) Plaintiff Linda Mellen began her employment with defendant Boston University in March 1977, as a secretary/administrative assistant in the business office of the Boston University Medical Campus ("BUMC"). BUMC was then comprised of

3

Boston University's Medical School, Dental School, School of Public Health, and the Medical Center Headquarters.

(11) Plaintiff worked her way through the ranks at BUMC, first to Budget Manager (1983), then to Budget Coordinator (1992), and then to the position of Financial Manager for the School of Public Health (1998).

(12) Over the course of her career at Boston University, plaintiff's annual salary increased from $8,300 to $75,500 (approx.), including many merit-based increases.

(13) As Budget Coordinator at BUMC, plaintiff was responsible for preparing large ($90 million approx.) budgets, working directly with the Deans and department heads of the schools that constituted the Medical Campus.

(14) As Financial Manager for the School of Public Health ("SPH"), plaintiff Mellen had primary responsibility for budgeting, financial management, and financial forecasting, and was responsible for developing SPH budgets that approximated $45,000,000 annually.

(15) From 1977 through November 2003, when she was terminated and/or falsely accused of resigning her position by defendants, plaintiff received consistently positive performance reviews. Plaintiff, over the 26+ years of her employment at BU, was never charged with any performance- or conduct-related misconduct, and specifically, was never charged or docked for excessive, unjustified, or unexplained absences.

(16) In or about April 2003, defendant Drolette encouraged her subordinates, including plaintiff Mellen, to take vacation leave to reduce their accruals of vacation leave. In response, plaintiff – who had substantial accrued vacation leave - asked for and

4

received defendants' permission to use a portion of her vacation leave in the periods October 6-27, November 26, and December 1-5, 2003.

(17) In or about June 2003, plaintiff advised defendant Drolette that she (plaintiff) would be applying for family leave to care for her 89-year-old mother, whose health had worsened after a fall in January 2003.

(18) In or about July 2003, defendant Drolette told plaintiff that she was "concerned" about approving plaintiff's request for family leave, and falsely charged plaintiff with being "disconnected" from her professional responsibilities because of the time she was spending with her mother. To placate defendant Drolette, plaintiff postponed her family leave one month (from July to August) and, as a result, was compelled to find alternative care arrangements for her mother for July 2003.

(19) In or about July 2003, plaintiff formally requested intermittent family leave to care for her mother. Plaintiff's subsequent submissions to defendants – including medical certifications related to her mother's health - identified plaintiff's leave as encompassing the maximum period allowed under Federal and state law.

(20) In or about July 2003, defendants approved plaintiff's request for intermittent family leave, despite Drolette's complaint to George T. Snowdon, BU's Director of Personnel, that "it is challenging to plan and manage the office objectives with [plaintiff's] sporadic absences."

(21) Plaintiff Mellen began her family leave on August 4, 2003. In the weeks leading up to August 4th, plaintiff worked tirelessly to address and complete priority tasks that were assigned to her; to brief colleagues on work that needed to be done during her family leave; and to communicate the status of her work to her colleagues and

5

supervisors. Plaintiff also told colleagues that she could make herself available to address emergencies that might develop during her family leave. Defendant Drolette was absent from work during the two week period that immediately preceded plaintiff's beginning her family leave.

(22) Soon after plaintiff began her family leave, defendant Drolette initiated a campaign to terminate plaintiff's employment, beginning with Drolette's making a variety of false and negative comments to Snowdon about plaintiff.

(23) In August 2003, defendant Drolette proposed to Snowdon several ways to terminate the plaintiff, including Drolette's disciplining her and/or eliminating her position.

(24) In September 2003, defendant Drolette proposed to Snowdon that she create an "analyst" position to justify her eliminating plaintiff's position and therefore her employment at BU.

(25) Acting in concert with defendant Drolette, Snowdon agreed to seek legal counsel regarding how long defendants should wait after plaintiff returned from family leave before defendants could terminate her.

(26) On October 1, 2003, plaintiff advised the defendants that because she had been unable to find alternative medical care arrangements for her mother, she would need to continue her family leave after her approved October vacation.

(27) Defendant Drolette responded by falsely telling plaintiff that she (Drolette) expected plaintiff to return to work on October 6, 2003.

6

(28) Plaintiff reminded Drolette that she (Drolette) had approved plaintiff's October vacation leave in April 2003 (*see infra*, para. 16), and that her intermittent family leave would then resume following the vacation period.

(29) On October 6, 2003, defendant Drolette falsely stated to Snowdon that plaintiff had promised to return to work on "some date in September".

(30) Throughout the period of her family leave, plaintiff was responsive to defendants' requests for assistance, and spent a significant amount of uncompensated time tending to work issues that defendants brought to her attention.

(31) On her own initiative, plaintiff submitted updates regarding her family leave to defendants at regular intervals, and she advised defendants that her mother's health condition had not changed.

(32) At no time during plaintiff's family leave did defendants request additional medical information or other information supportive of plaintiff's entitlement to family leave.

(33) By letter dated October 24, 2003, defendant Drolette unjustifiably and unfairly disciplined plaintiff by means of a written letter of reprimand, which concluded, "If you are not able to make prompt and substantial improvements in these areas ["communication, initiative and ownership"] when you return, we will have to discuss whether it is mutually beneficial for you to continue your employment at [the School of Public Health]." At the time of Drolette's letter of reprimand, plaintiff had not been present at BU or actively engaged as Financial Manager since August 3, 2003, and had had no opportunity over the ensuing months to "communicat[e], initiat[ate], or own[ ]" anything regarding her position as Financial Manager.

(34) Prior to her October 24, 2003 letter of reprimand, defendant Drolette had not negatively characterized or evaluated plaintiff's "communication, initiative and ownership" capabilities, at least not to plaintiff or to plaintiff's knowledge.

(35) Also in her October 24th letter of reprimand -- after conceding her confusion regarding the duration of plaintiff's family leave -- Drolette falsely charged plaintiff with misstating the period of her family leave. Drolette also objected to plaintiff's use of vacation time in October 2003, despite her prior approval of the same.

(36) In her letter of reprimand, defendant Drolette also made a series of false and defamatory statements about plaintiff's professionalism regarding her use of family leave; mischaracterized statements that plaintiff had previously made to Drolette; and falsely claimed that plaintiff was obligated to continue her duties as Financial Manager during plaintiff's family leave.

(37) By letter dated November 19, 2003 and transmitted to defendants by fax on November 20, 2003, plaintiff communicated her concern to defendants that Drolette's "threatening" letter of October 24, 2003 rendered plaintiff's job at BU "unsafe".

(38) By letter dated November 20, 2003, defendants terminated plaintiff's employment and/or falsely accused plaintiff of resigning her employment, effective November 18, 2003. In defendants' letter, which plaintiff received on November 23, 2003, defendants falsely and erroneously claimed that plaintiff's failure to return to work on November 19, 2003, represented plaintiff's resignation of her position. In fact, on November 19, 2003, plaintiff was entitled and justified by Federal and state family leave law to be absent from her job to care for her mother. In addition, plaintiff on November 19, 2003, was entitled to protection against retaliatory employment actions.

8

(39) By letter dated and faxed to defendants on November 20, 2003, plaintiff, through counsel, formally objected to and opposed defendants' harassment and retaliation because of her use of family leave. In the letter, plaintiff represented that she was willing and able to return to work.

(40) Plaintiff did not abandon or resign from her employment on November 18, 2003, or at any other time. In addition, defendants' termination of plaintiff's employment and/or their declaration that plaintiff had resigned her employment effective November 18, 2003, violated defendants' own personnel policies and practices.

(41) Defendants were obligated by law to permit plaintiff to continue her family leave as long as her mother's health required, until the combined allowances of family leave under Federal and state law were exhausted.

(42) Plaintiff has suffered damages as a proximate result of defendants' misconduct.

### III. LEGAL CLAIMS

#### Count I – Defendants Wrongfully Failed to Provide Plaintiff Sufficient Family Leave

(43) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(44) Plaintiff, in a timely and sufficient manner, notified defendants of her need for the maximum period of family leave, to be taken on an intermittent basis, and submitted sufficient documentation in support of her request to qualify for such leave.

(45) Pursuant to the FMLA, plaintiff was approved for and entitled to 12 weeks (60 days) of family leave, taken in intermittent periods (*i.e.*, plaintiff's family leave

balance would be charged only with the amount of leave plaintiff actually took), to care for her ill mother.

(46) The FMLA establishes a minimum (or a "floor") for family leave allowances, and encourages states to supplement the FMLA with additional substantive leave rights.

(47) The FMLA also encourages employers to supplement the FMLA with additional substantive leave rights and, as a consequence, defendants maintained personnel policies and practices that extended plaintiff's return-to-work date an additional three (3) working days, by staying the initiation of discipline against employees who were purportedly absent from work without explanation.

(48) In accordance with the FMLA, plaintiff was entitled to family leave on November 19, 2003, and therefore privileged to be absent from work that day.

(49) Defendants, however, wrongfully terminated plaintiff's employment and/or falsely accused plaintiff of resigning effective November 18, 2003, because of plaintiff's absence from work on November 19, 2003, and thereby failed to provide plaintiff the appropriate and required amount of family leave.

(50) Defendants' violation of the FMLA has proximately caused plaintiff damages.

### Count II – Defendants Wrongfully Failed to Restore Plaintiff to the Same or Equivalent Position of Employment

(51) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(52) The FMLA requires that following her family leave, plaintiff be restored to the same or an equivalent position of employment with the defendants, "with equivalent benefits, pay and other terms and conditions of employment."

(53) Instead of restoring plaintiff to her employment at the conclusion of her family leave, defendants terminated plaintiff during her family leave, thereby violating her right to reinstatement.

(54) Defendants' violation of the FMLA has proximately caused plaintiff damages.

### Count III – Defendants Wrongfully Terminated Plaintiff's Family Leave Benefits

(55) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(56) The FMLA required defendants to continue plaintiff's employment and her family leave benefits throughout the available family leave period, until and unless plaintiff tendered to defendants an "unequivocal notice" of her intention not to return to work.

(57) During the period of her family leave, plaintiff did not tender to defendants an "unequivocal notice" of her intention not to return to work. In fact, during her family leave period, plaintiff periodically represented to defendants her continuing intention and desire to return to work.

(58) Despite the absence of unequivocal notice of plaintiff's intention not to return to work, defendants falsely asserted that plaintiff had resigned her position.

11

(59) Defendants' violation of the FMLA has proximately caused plaintiff damages.

### Count IV – Defendants Wrongfully Considered Plaintiff's Family Leave When Taking Adverse Actions against Her

(60) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(61) The FMLA prohibits defendants from considering plaintiff's family leave or the absences justified by her family leave as a negative factor in any employment action taken against plaintiff, including discipline, performance evaluation, and termination.

(62) Defendants violated this prohibition in various respects, including but not limited to their:

- negative and inaccurate evaluation of the plaintiff's "communication, initiative, and ownership" capabilities;
- negative consideration of plaintiff's absences when considering plaintiff's work as Financial Manager;
- campaign to remove plaintiff from her job and/or to eliminate her job;
- their written reprimand of plaintiff and threat to terminate her in October 2003; and,
- their termination of plaintiff, or false declaration of her resignation, in November 2003.

(63) Defendants' violation of the FMLA has proximately caused plaintiff damages.

### Count V – Defendants Interfered with Plaintiff's FMLA Rights

(64) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(65) The FMLA grants plaintiff the right to be free from defendants' interference with her rights under the FMLA.

(66) Defendants' violations of plaintiffs' rights under the FMLA as outlined in Counts I-IV above constitute "interference" with plaintiff's rights, and are separately actionable as such.

(67) Defendants' violation of the FMLA has proximately caused plaintiff damages.

### Count VI – Defendants Retaliated Against Plaintiff Because of Plaintiff's Assertion and Enjoyment of Family Leave Rights

(68) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(69) In 2003, plaintiff asserted and enjoyed the family leave rights afforded her under the FMLA.

(70) The FMLA prohibits defendants from retaliating in any way against employees who assert and enjoy their rights to family leave, including retaliation in the form of adverse employment actions.

(71) Defendants willfully, intentionally, and in bad faith retaliated against plaintiff in various respects on account of her asserting and enjoying her family leave rights, including but not limited to defendants':

- negative and inaccurate evaluation of the plaintiff's "communication, initiative, and ownership" capabilities;
- their negative consideration of plaintiff's absences when considering plaintiff's work as Financial Manager;
- their campaign to remove plaintiff from her job and/or to eliminate her job;
- their reprimand of plaintiff and threat to terminate her in their letter of October 24, 2003;
- their failure to extend to plaintiff the benefits of their personnel policies regarding purportedly unexplained absences;
- their failure to supplement plaintiff's leave with SNLA benefits;
- their failure to give notice to plaintiff of their intention to terminate her, or to treat her absence as a voluntary resignation; and,
- their termination of plaintiff, or false declaration of plaintiff's resignation, in November 2003.

(72) Defendants terminated plaintiff effective November 18, 2003 (or falsely declared her resignation on said date) because she was on family leave, and therefore absent from work, on November 19, 2003. This adverse action constitutes a direct, willful, and bad faith violation of plaintiff's right to continuing family leave before, on and after November 19, 2003.

(73) Defendants' termination of plaintiff's employment was proximately caused by plaintiff's assertion and enjoyment of her family leave rights.

(74) Defendants' retaliation against the plaintiff has proximately caused plaintiff damages.

### Count VII – Defendants Retaliated Against Plaintiff Because Plaintiff Opposed Defendants' Unlawful Family Leave Practices

(75) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(76) The FMLA prohibits employers from retaliating in any way against employees who object and oppose their employer's illegal family leave practices and policies, or any such practices or policies they reasonably believe to be illegal.

(77) Plaintiff openly objected to and opposed family leave practices of defendants that were unlawful under the FMLA and/or the relevant regulations (or which practices she reasonably believed were unlawful), including but not limited to plaintiff's insistence that she was entitled to the full measure of family leave afforded by Federal and state law, and defendants' personnel policies and practices; her assertion that her family leave exempted her from those work-related responsibilities that defendants assumed she would continue to perform; and her objection to defendants' threats and harassment.

(78) Defendants willfully, intentionally, and in bad faith retaliated against plaintiff in various respects on account of her objection and opposition to defendants' family leave practices, including but not limited to defendants':

- negative and inaccurate evaluation of the plaintiff's "communication, initiative, and ownership" capabilities;

- their negative consideration of plaintiff's absences when considering plaintiff's work as Financial Manager;

- their campaign to remove plaintiff from her job and/or to eliminate her job;

- their reprimand of plaintiff and threat to terminate her in their letter of October 24, 2003;

- their failure to extend to plaintiff the benefits of their personnel policies regarding purportedly unexplained absences;

- their failure to supplement plaintiff's leave with SNLA benefits;

- their failure to give notice to plaintiff of their intention to terminate her, or to treat her absence as a voluntary resignation; and,

- their termination of plaintiff, or false declaration of plaintiff's resignation, in November 2003.

(79) Defendants' retaliation against plaintiff proximately caused plaintiff damages.

**Count VIII – Defendants Violated Plaintiffs' SNLA Rights**

(80) Plaintiff realleges and incorporates by reference the allegations set out in paragraphs (1)-(42) above, as though fully stated herein.

(81) In addition to her entitlement to family leave under the FMLA, plaintiff was entitled to three (3) additional working days of family leave, in accordance with the Small Necessities Leave Act, Massachusetts General Laws, ch. 149, s. 52D.

(82) At all relevant times during plaintiff's use of SNLA leave, plaintiff was engaged in family care obligations cognizable under the SNLA.

(83) As with the rights plaintiff enjoyed under the FMLA, plaintiff was entitled by the SNLA to:

- take any and all SNLA leave as her family situation required;
- be restored to the same or equivalent position of employment with defendant upon the expiration of the SNLA leave period;
- have her employment and family leave benefits continued throughout the available family leave period, until and unless plaintiff tendered to defendants "an unequivocal notice" of her intention not to return to work;
- be free from defendants' negative consideration of her SNLA leave in their taking of employment actions against her;
- be free from defendants' interference with plaintiff's SNLA rights;
- be free from retaliation by defendants because of her assertion and enjoyment of her SNLA rights; and,
- be free from retaliation by defendants because of her opposition to defendants' family leave practices.

(84) Defendants' various actions and decisions as outlined in Counts I-VII above, including but not limited to their termination of plaintiff's employment and/or false declaration that plaintiff had resigned her employment, violated plaintiff's rights under the SNLA.

(85) Defendants' violations of the SNLA have proximately cause plaintiff damages.

(86) Plaintiff in a timely and sufficient manner filed a claim regarding these SNLA violations with the Office of the Attorney General, Commonwealth of

Massachusetts, which has jurisdiction over SNLA violations in accordance with M.G.L. ch. 149, s. 52D and 150; and subsequently received a right-to-sue letter from the Office of the Attorney General. *See* Letter at Tab A hereto.

**WHEREFORE**, the plaintiff **Linda Mellen** requests that the Court enter the following relief:

(1) Upon Counts I-VIII above, judgment in favor of the plaintiff Mellen and against the defendants Boston University and Drolette, jointly and severally;

(2) Upon Counts I-VIII, the assessment and entry of damages against the defendants, jointly and severally, under each Count of this Complaint, as fairly and reasonably compensates plaintiff for her damages, including but not limited to reinstatement, back pay, front pay, liquidated damages (29 U.S.C. s. 2617), treble damages (M.G.L. ch 149, s. 52D and 150), attorneys' fees, costs, and interest, and any other relief that the Court may find appropriate.

**PLAINTIFF REQUESTS AND CLAIMS A TRIAL BY JURY UPON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
**Linda Mellen,** by her attorney,

_____
Harry C. Beach BBO#547893
**Law Offices of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
Office: 781.769.6900
Cell: 617.968.4531
AttyBeach@aol.com

**March    , 2004**

18