UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LINDA MELLEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TRUSTEES OF BOSTON UNIVERSITY )<br>AND FRANCES A. DROLETTE, )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10644-MEL |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

In the summer of 2003 Plaintiff Linda Mellen ("Plaintiff" or "Mellen") sought to take leave pursuant to the Family and Medical Leave Act ("FMLA" or the "Act") for twelve weeks spanning the late summer and fall to care for her mother. Plaintiff's application requested leave through November 18, 2003. The University approved her leave through that date, and explained that she would be deemed to have resigned from the University if she did not return from work by November 19, 2003. In the weeks leading up to the end of Plaintiff's leave, the University reiterated that her expected return date was November 19. Plaintiff did not contact the University to seek additional time off, and did not return to work on November 19 or at any time thereafter. The University notified Plaintiff that it had determined that she had resigned – precisely as it said it would do – and she brought this lawsuit shortly thereafter.

Plaintiff alleges a host of violations of the FMLA and the Massachusetts Small Necessities Leave Act. She claims that she was entitled to additional leave, that the

University failed to allow her to return to her job, that the University retaliated against her for using FMLA leave, and that the University failed to provide Plaintiff with leave pursuant to the Massachusetts Small Necessities Leave Act ("SNLA").

These claims must fail as a matter of undisputed fact and clear law. It is undisputed that Plaintiff received the entire twelve weeks of leave provided by the FMLA and did not return to her job at the end of that leave period. The University was under no obligation to permit her to return to her old job after she failed to return from leave, and properly deemed her to have resigned when she failed to return to work. Plaintiff's claims that Defendants retaliated against her because she took leave also are unavailing. The only action taken against her that would arguably constitute an adverse employment action was the acceptance of her resignation when she failed to return to work. The University was entitled to do so as a matter of law when she failed to return.

Moreover, there is no evidence from which a reasonable jury could conclude that Defendants retaliated against Plaintiff because she took FMLA leave. Plaintiff's supervisor, Defendant Frances A. Drolette ("Drolette"), and others had documented a variety of performance issues even before Plaintiff requested leave, and Drolette and others were frustrated by Plaintiff's failure to communicate about the duration and timing of her leave. There is no evidence, however, that Defendants retaliated against Plaintiff because she took FMLA leave.

Finally, Plaintiff has no claim under the SNLA because she never requested leave under the SNLA. The SNLA explicitly requires employees to request leave and to provide employers with advance notice of the need for leave. Plaintiff did not do so. She simply cannot claim she was not provided with a benefit she never requested.

**UNDISPUTED MATERIAL FACTS**

Please see Defendants' LR 56.1 Statement of Undisputed Material Facts, together with the attached exhibits, filed herewith.

<u>The Complaint</u>

The Complaint sets out eight counts under the federal Family and Medical Leave Act and the Massachusetts Small Necessities Leave Act, many of which are duplicative. Mellen alleges that Defendants "wrongfully failed to provide Plaintiff sufficient Family Leave" pursuant to the FMLA (Count I), that Defendants "wrongfully failed to restore Plaintiff to the same or equivalent position of employment" as required by the FMLA (Count II), that Defendants "wrongfully terminated Plaintiff's [FMLA] leave benefits" (Count III), that Defendants "wrongfully considered Plaintiff's [FMLA] leave when taking adverse actions against her" (Count IV), that Defendants "interfered with Plaintiff's FMLA rights" (Count V), that Defendants "retaliated against Plaintiff because of Plaintiff's assertion of and enjoyment of [FMLA] leave rights" (Count VI), that Defendants "retaliated against Plaintiff because Plaintiff opposed Defendants' unlawful family leave practices" (Count VII), and that Defendants "violated Plaintiff's SNLA rights" (Count VIII). Plaintiff asserts no contractual or common law claims.

**ARGUMENT**

To defeat a properly supported motion for summary judgment, the non-moving party must establish the existence of all the essential elements of the claims on which that party bears the burden of proof at trial:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

> existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *Cormier v. Littlefield*, 112 F.Supp.2d 196, 198 (D. Mass. 2000) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "A factual dispute which is neither 'genuine' nor 'material' will not survive a motion for summary judgment." *Santos v. Shields Health Group*, 996 F.Supp. 87, 91 (D. Mass. 1998). "Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings." *Id.* Courts in this Circuit regularly grant employer's motions for summary judgment on FMLA claims. *See*, *e.g.*, *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538 (1st Cir. 1999); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998); *Cormier*, 112 F.Supp.2d at 200; *Barry v. Wing Mem. Hosp.*, 142 F.Supp. 2d 161, 166 (D. Mass. 2001).[1]

---

[1] Courts in other jurisdictions routinely grant motions for summary judgment for employers on FMLA claims as well. *See*, *e.g.*, *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757 (5th Cir. 2001); *Hicks v. Leroy's Jewelers, Inc.*, 225 F.3d 659 (6th Cir. 2000); *Sabatino v. Flik Int'l Corp.*, 286 F.Supp.2d 327 (S.D.N.Y. 2003); *Manns v. ArvinMeritor, Inc.*, 291 F.Supp.2d 655 (N.D. Ohio 2003); *Panto v. Palmer Dialysis Center/Total Renal Care*, No. Civ. A. 01-6013 (E.D. Pa. April 7, 2003); *Smith v. Blue Dot Serv. Co.*, 283 F.Supp.2d 1200 (D. Kan. 2003); *Roberson v. Cendant Travel Services, Inc.*, 252 F.Supp.2d 573 (M.D. Tenn. 2002); *Fulham v. HSBC Bank USA*, No. 99 Civ. 11054 (JGK), 2001 WL 1029051 (S.D.N.Y. Sept. 6, 2001); *Holmes v. E.Spire Communications, Inc.*, 135 F.Supp.2d 657 (D. Md. 2001); *Nunes v. Wal-Mart Stores, Inc.*, 980 F.Supp. 1336 (N.D. Cal. 1999), *rev'd on other grounds*, 164 F.3d 1243 (9th Cir. 1999); *Rich v. Delta Air Lines, Inc.*, 921 F.Supp. 767 (N.D. Ga. 1996).

I.  **DEFENDANTS DID NOT VIOLATE MELLEN'S RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT**

The FMLA creates two distinct sets of rights. First, eligible employees are entitled, as a matter of substantive right, to "a total of 12 work weeks of leave during any 12-month period," 29 U.S.C. § 2612(a)(1), and to return to the same or an equivalent position upon return from a qualified absence. 29 U.S.C. § 2614(a)(1). With respect to these substantive rights, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA – for example, a twelve-week leave or reinstatement after taking a medical leave." *Hodgens*, 144 F.3d at 159. In analyzing whether an employer provided these substantive rights, "the employer's subjective intent is not relevant." *Id*. Second, the FMLA prohibits employers from discriminating against employees who use FMLA leave. 29 U.S.C. § 2615(a). *Hodgens*, 144 F.3d at 159-60. To assess whether an employer has discriminated against an employee, courts use the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *Hodgens*, 144 F.3d at 160.

   A.  **Defendants Did Not Deprive Mellen of Any Substantive Rights Under the FMLA**

Courts are uniformly clear that an employer is required to provide twelve weeks – and only twelve weeks – of leave under the FMLA. *Manns*, 291 F.Supp.2d at 660 ("Twelve weeks is both the minimum and the maximum amount of leave to which the employee is entitled under the FMLA."). The right to reinstatement is not triggered unless and until the employee returns from leave. *Barry*, 142 F.Supp.2d 166 (finding that plaintiff's "right to reinstatement would not have been triggered *until* she returned to

5

work") (emphasis in original).  If an employee fails to return after the end of the authorized leave, the employer has no obligation whatsoever to reinstate the employee. *Cormier*, 112 F.Supp.2d at 200 ("An employer is not required to hold an employee's position open beyond the 12-week period when that employee is unable to return at its expiration."); *Barry*, 142 F.Supp.2d at 165 ("an employee has no right to reinstatement if she has not returned to work after her twelve weeks of FMLA leave have ended"); *Green v. New Balance Athletic Shoe, Inc.*, 182 F.Supp.2d 128, 140 (D. Me. 2002) ("Defendant had the right to terminate [plaintiff] once she did not return to work after her leave had expired.").[2]

1. <u>Mellen Received the Full Duration of Her FMLA Leave</u>

Mellen was on approved leave pursuant to the FMLA from August 4, 2003 through October 3, 2003 (9 weeks) and October 28, 2003 through November 18, 2003 (3 weeks), totaling 12 full weeks (60 days total).  <u>Exhibit 2</u>.[3]  She received the full duration of FMLA leave provided by law, 29 U.S.C. § 2612(a)(1), and all of the leave that she had

---

[2] Courts in other jurisdictions routinely reach the same result. *See*, *e.g.*, *Hicks*, 225 F.3d 659 ("an employee on approved FMLA leave has no right to job restoration under the Act if she fails to return to work twelve weeks after her leave began"); *Miller v. Personal-Touch of Virginia, Inc.*, 342 F.Supp.2d 499, 515 (E.D. Va. 2004) ("Following expiration of the twelve week period, [defendant] had no responsibility to restore the plaintiff to her prior position."); *Sabatino v. Flik Int'l Corp.*, 286 F.Supp.2d 327, 336 (S.D.N.Y. 2003) (holding that where plaintiff failed to return to work after 12-week leave period employer "had no obligation to return plaintiff to any job, let alone her former position."); *Manns*, 291 F.Supp.2d at 660 ("Once an employee exceeds his twelve weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA."); *Panto*, 2003 WL 1818990 at *6; *Fulham*, 2001 WL 1029051 at *4 ("While the FMLA requires employers to provide a total of 12 workweeks of leave during a 12-month period for the reasons specified in the statute, it does not require an employer to provide more."); *Nunes*, 980 F.Supp. at 1341 (defendant's "obligation to hold open [plaintiff's] position continues for twelve weeks; after this period, the employer has no legal obligation to hold an employee's position open"); *Donnellan v. New York City Transit Auth.*, No. 98 Civ. 1096, 1999 WL 527901 at *5 (S.D.N.Y. July 22, 1999) (the right to reinstatement "only obtains where the plaintiff is able to return to her position at the conclusion of her FMLA leave period"). *Accord Smith*, 283 F.Supp.2d at 1205 (granting employer's motion to dismiss where employee terminated after failing to return to work at conclusion of FMLA leave).

[3] For convenience, all exhibits referenced herein are appended to Defendants' Statement of Undisputed Material Facts, filed herewith.

6

requested and for which she had been approved. Although Mellen says that she believed the University had "miscalculated" the duration of her leave, Mellen Day 2 Tr. at 61-62, she claims she cannot say specifically when she was required to return because she is not a lawyer or an expert on FMLA issues. Mellen Day 2 Tr. at 61-62.[4] She did, however, offer two theories for the extension of her FMLA leave: the observance of a University holiday on November 17 and a policy she described as a "three-day grace period." Neither extended Mellen's FMLA leave as a matter of law.

Mellen alleges that the duration of her leave was extended by at least one day by a University holiday that fell during the time of her leave. See Mellen Day 2 Tr. at 35-36; Exhibit 5. However, the law is clear that holidays do not serve to extend FMLA leave. 29 C.F.R. § 825.200(f) ("For purposes of determining the amount of leave used by an employee, the fact that a holiday may occur within the week taken as FMLA leave has no effect; the week is counted as a week of FMLA leave."). In correspondence Plaintiff's counsel has cited 5 C.F.R. § 630.1203 for the proposition that holidays do not count towards leave taken under the FMLA, but that provision applies by its terms only to federal employees. *See* 5 C.F.R. 630.1201.

Mellen also testified that she thought that a "three-day grace period" would extend her leave for three days, Mellen Day 1 Tr. at 197-98, and after reviewing the Personnel Policy Manual explained that her argument was grounded in Section 202.1, in

---

[4] It is beyond dispute that Mellen received the full 12 weeks (60 days) of leave under the FMLA. However, even if the University had somehow miscalculated the duration of Mellen's leave, Mellen should not be permitted to recover under these circumstances. "Even if defendant's calculations are wrong, defendant's termination of plaintiff's employment based on an honest but incorrect belief that plaintiff had depleted his FMLA leave days should not subject defendant to liability." *Manns*, 291 F.Supp.2d at 661 n.5. *See also Hicks*, 225 F.3d 659 (affirming grant of summary judgment to employer in spite of dispute about return date where employee could not have returned to work on either date); *Holmes*, 135 F.Supp.2d at 665-66 (granting summary judgment for employer in similar circumstances). If Mellen believed there had been a miscalculation, she should have said so.

7

the section on "Attendance – Absence From Work." That section provides that "[i]f an employee is absent from work for three (3) consecutive scheduled workdays and has not notified his or her supervisor of the unscheduled absence, the employee will be considered to have resigned voluntarily from the University." Mellen Day 1 Tr. at 214-216; Exhibit 27. Mellen admits that she never told anyone at the University that she planned or needed to take additional leave, *id.* at 198, never asked anyone at the University whether the "grace period" would apply to her under the circumstances, Mellen Day 1 Tr. at 200, 216, and could not identify a single employee who had ever received the benefit of a "grace period" after returning from FMLA leave. Mellen Day 1 Tr. at 200-01. George Snowdon testified that the "grace period" provision does not apply to leave taken pursuant to the FMLA. Snowdon Tr. at 41-42.

The "grace period" did not extend Mellen's leave as a matter of law. First, the Policy Manual addresses leave under the FMLA specifically in Section 312. It clearly provides that "Family and Medical Leave may be approved for a maximum of twelve weeks in a twelve-month period." Exhibit 27 at 312.3. Moreover, the Policy specifies that "[a]n employee who fails to return to work by the expected return date will be considered to have resigned voluntarily from the University," *id.* at 312.7, and Snowdon's letter to Mellen describing her own FMLA leave confirmed that the University would not hold her position after the twelve weeks expired. Exhibit 3. It is a uniform principle of construction that specific provisions supersede general language. *See*, *e.g.*, Restatement (Second) of Contracts (1981) § 203(c); *Hill Constr. Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1319 (1st Cir. 1993). Consequently, there is no

8

basis for construing the Policy Manual to provide a three-day "grace period" for employees returning from FMLA leave.

Even if the University's Policy Manual obliged it to provide Mellen with three additional days of leave, there is no cause of action under the FMLA to enforce that contractual obligation. Courts uniformly have recognized that where an employer implements a leave policy more generous than the twelve weeks mandated by the FMLA, the FMLA "cannot be interpreted to give employees a cause of action *under the FMLA* to enforce other employment agreements." *Holmes*, 135 F.Supp.2d at 666-67 (emphasis in original) (noting that the FMLA "does not provide a remedy for broken promises or deviation from policy"). *See also Green*, 182 F.Supp.2d at 135 (holding that there is no "cause of action under the FMLA if an employer with a leave policy more generous than the one the FMLA mandates fails to provide an employee with more than twelve weeks of leave").[5] Mellen received the full twelve weeks of FMLA leave, and she did not request and was not entitled to any more.

    2.    <u>Mellen Was Not Entitled to Reinstatement Because She Did Not Return from Leave</u>

It is undisputed that Mellen did not return to work as she was required to do on November 19 or thereafter. Mellen Day 2 Tr. at 68. Prior to November 19, the University had notified Mellen that if she did not return to work on her designated return date that she would be considered to have voluntarily resigned, <u>Exhibit 3</u>, and Mellen

---

[5] *Accord Panto*, 2003 WL 1818990 at *6 (holding that "the FMLA does not create a federal cause of action to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA"); *Fulham*, 2001 WL 1029051 at *8 (holding that "there is nothing in the FMLA itself that provides a federal cause of action against employers for violation of their own employee benefit plans"); *Rich*, 921 F.Supp. at 773 (explaining that regulations do not "create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA").

mailed a letter on November 19 confirming that she would not return to her job. Mellen Day 2 Tr. at 60-61; Exhibit 25.[6] Having failed to return from leave, Mellen was not entitled to reinstatement as a matter of law. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) ("When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the . . . FMLA.").

As a matter of law, Mellen's letter claiming that she felt it was "not safe" to return to work because of the October 24 letter of Defendant Frances A. Drolette did not obviate the requirement that Mellen return from leave in order to be entitled to reinstatement. Drolette's October 24 letter, sent while Mellen was on vacation, was an entirely appropriate recitation of legitimate concerns with Mellen's communication and professionalism concerning her leave. The FMLA does not "authorize employees on leave to keep their employers in the dark about when they will return." *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) ("Notice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help."). *Accord Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002). The letter certainly did not effect a constructive discharge (and Mellen has not claimed that it did), which "usually describes harassment so severe and oppressive that staying on the job while seeking redress is intolerable." *Barry*, 142 F.Supp.2d at 166 (explaining that letter sent to employee while on leave "may have been insensitive" but "was not so insensitive that it prevented [plaintiff] from working while seeking her FMLA

---

[6] Mellen's attorney faxed a letter on November 20 urging the University "not to misunderstand [Mellen's] intentions" and stating that Mellen "is willing and able to return to work." Exhibit 28. On November 20, however, Mellen was no longer protected by FMLA leave. *See Sabatino*, 286 F.Supp.2d at 336 (holding that "defendants had no obligation to return plaintiff to any job, let alone her former position" when she reported for work after her FMLA leave had expired).

10

remedies"). Even an unfavorable performance review or a demotion is not sufficient to create a constructive discharge. *GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 34 (1995).

Consequently, Mellen was obliged to return to work on her designated return date, November 19. "Although an employee need not show up on the employer's doorstep in order to have qualified as returning from FMLA leave, the employee must be able to return to her prior position before she has a right to reinstatement." *Barry*, 142 F.Supp.2d at 165 (internal citation omitted). In this case, Mellen made no effort whatsoever to contact the University either to seek additional leave or to report that she believed the duration of her leave had been miscalculated. Mellen received two letters from the University shortly before her scheduled return to confirm that she was expected on November 19, and she received an e-mail from Drolette proposing a meeting on November 19 to discuss work-related goals. Mellen Day 2 Tr. at 59-60; Exhibit 26. Mellen then mailed a letter on November 19 (from Albany, New York) explaining that she would not return. Exhibit 25. Under these circumstances, it is clear that Mellen made no effort whatsoever to retain her position. *Compare Watkins v. J&S Oil Co.*, 164 F.3d 55, 60-61 (1st Cir. 1998) (affirming jury's finding that plaintiff did not resign where he had called to request his job remain open). *See also Miller*, 342 F.Supp.2d at 515 ("The plaintiff cannot expect a windfall when [defendant] has complied with the FMLA in respect to her rights under it.")

It is also clear from the record that Mellen was unable to return from leave on November 19. Mellen was with her mother in Albany, New York when she sent her letter of November 19. Mellen Day 2 Tr. at 69. She testified that she did not expect to be able to return to work at the conclusion of her FMLA leave unless she made alternative

11

care arrangements for her mother, Mellen Day 2 Tr. at 90, and she had not done so by her scheduled return. Mellen Day 2 Tr. at 96. When it came time for Plaintiff to return to work, she had not hired anyone to provide home healthcare coverage, admitted her mother to an assisted living facility, or identified anyone else to provide primary care for her mother. Mellen Day 2 Tr. at 96. Under these circumstances, no jury reasonably could find that Mellen was able to return to work on November 19. *Accord Roberson*, 252 F.Supp.2d at 579 (granting defendant's motion for summary judgment where "the record overwhelmingly supports the conclusion that Plaintiff was not able to return to work at the end of her FMLA leave").[7] Mellen had no right to reinstatement after she failed to return on her appointed return date as a matter of law.

### B. Defendants Did Not Retaliate Against Mellen

Mellen claims that Defendants retaliated against her by "terminating" her on November 20, 2003 (Count VI), and that the retaliation was, in part, because Plaintiff "opposed Defendants' unlawful family leave practices." (Count VII) To make out a prima facie case of retaliation, a plaintiff must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens*, 144 F.3d at 161. Here, there is no charge that the University took any adverse employment action with respect to Mellen other than determining to accept her resignation on November 20. As discussed in

---

[7] *See also Cormier*, 112 F.Supp.2d at 200 ("An employer is not required to hold an employee's position open beyond the 12-week period when that employee is unable to return at its expiration."); *Donnellan*, 1999 WL 527901 at *5 (granting defendant's motion to dismiss where employer eliminated employee's position when she was physically unable to return to work after receiving the full duration of FMLA leave); *Holmes*, 135 F.Supp.2d at 665-66 (granting employer's motion for summary judgment where plaintiff's testimony confirmed that she was unable to return to work on her expected return date).

Section I.A., *supra*, it was entitled to do that as a matter of law when Mellen did not report for work or otherwise seek to maintain her position on or before November 19.

There is certainly no evidence from which a jury reasonably could conclude that Mellen "opposed" any of the University's practices.  She testified that although she disagreed with the University's conclusion that holidays did not extend her leave she never told anyone at the University that she disagreed. Mellen Day 2 Tr. at 42.  And although she testified that she believed that the University had miscalculated her return date, she never told anyone at the University that she believed there had been a miscalculation, nor did she make any effort to ask the University to recalculate or otherwise extend her leave.  Mellen Day 2 Tr. at 61-62.

However, even if the Court were to consider Defendants' acceptance of Plaintiff's deemed resignation through the lens of a retaliation claim, there is no evidence from which a reasonable jury could conclude that Defendants discriminated against Mellen in any way because she took leave.  Plaintiff may contend that Drolette voiced concerns to George Snowdon and others about Mellen's performance and communication while Mellen was out on leave.  However, the record is clear that both Drolette and Dean Robert Meenan had concerns about Mellen's performance that predated her request for leave.  Meenan Tr. at 19-20, 22-24; Exhibit 15.  Drolette also developed concerns about Mellen's lack of communication concerning her leave and Mellen's failure to attend to projects she had agreed to complete before her leave, as Drolette explained during her deposition and described in detail in her letter of October 24.  Mellen Day 2 Tr. at 43-44, Exhibit 11.  In short, there were a variety of concerns about Mellen's performance prior to leave and her communications concerning her leave.  There is no evidence from which

13

a jury reasonably could conclude that anyone at the University, including Drolette, took any action against Mellen because she *took* leave.

Although Mellen testified several times in her deposition that she believed that Drolette thought it was "unprofessional" for Mellen to take leave to care for her mother, she could not describe anything at all about any conversation that would suggest that Drolette was, in fact, critical of Mellen's leave in any respect whatsoever. *See* Mellen Day 1 Tr. at 108-114; 118-19; 135-36; 38. Mellen could not recall when any such conversation took place, where any such conversation took place, what Mellen said, or what Drolette said, other than to note that Drolette used the words "professional" and "responsible." *Id.* Indeed, Mellen confirmed that her claims that Drolette "fired [her] because [she] was on leave taking care of [her] mother" were simply "[her] view of what happened" and not based on anything Drolette ever said to her. Mellen Day 1 Tr. at 135-36.[8] Under these circumstances, judgment should enter summarily for Defendants on all of Plaintiff's FMLA claims.

## II. DEFENDANTS DID NOT VIOLATE MELLEN'S RIGHTS UNDER THE SMALL NECESSITIES LEAVE ACT

The Massachusetts Small Necessities Leave Act (the "SNLA"), M.G.L. ch. 149, § 52D permits certain eligible employees to take 24 hours of unpaid leave in addition to the twelve weeks' leave provided by the FMLA. M.G.L. ch. 149, § 52D(b). By its express terms, the SNLA requires the employee to provide at least seven days' notice if the necessity for leave is foreseeable, and "as is practicable" if the necessity is not

---

[8] Indeed, Drolette was encouraging of Mellen's leave in e-mails sent to Mellen during this time period. *See*, *e.g.*, Mellen Day 1 Tr. at 182-83; Exhibit 19 ("Linda, again, I hope that this time helps you toward managing this very difficult situation. My thoughts will be with you."); Mellen Day 2 Tr. at 15, Exhibit 29 at BU 0275 ("I hope that things are progressing the way you planned with your Mom's care, and you are also finding time to take care of yourself."); Mellen Day 2 Tr. at 33; Exhibit 4 ("I am sorry that your mom's situation has not progressed. I hope, that at least she is feeling better.").

14

foreseeable. *Id.* at § 52D(d). The Act also allows employers to require certification of the necessity of the leave. *Id.* at § 52D(e). The Attorney General is charged with the enforcement of the statute, but an individual may bring an action pursuant to M.G.L. ch. 149, § 150, ¶ 2. M.G.L. ch. 149, § 52D(f). The SNLA is not the subject of any reported case.

It is undisputed that Mellen did not request any leave beyond the FMLA leave application she submitted on July 17, 2003. Mellen Day 1 Tr. at 181-82, 197. Given the foreseeable nature of her leave – caring for her mother – there is no reason Mellen could not have provided seven days' notice of any need for SNLA leave. Indeed, she clearly could and did communicate to the University in October that she believed her leave should be extended by one day in light of the November 17 holiday. Mellen Day 2 Tr. at 35-36, Ex. 22. Mellen did not ask for leave under the SNLA, and the University was under no obligation to provide leave under the SNLA absent a request. M.G.L. ch. 149, § 52D(d).

During the course of discovery, Plaintiff has made much of the fact that the University did not post notices describing the SNLA or otherwise notify employees of that Act. However, the SNLA does not require employers to provide notice of any kind. Although the Secretary of Labor has promulgated regulations pursuant to 29 U.S.C. § 2654 describing specific notice requirements for the FMLA, 29 C.F.R. 825.301, those requirements are not set forth or even incorporated by reference in the SNLA. M.G.L. ch. 149, § 52D. Indeed, the Advisory from the Attorney General specifies that Sections 2611 through 2615 of the FMLA are explicitly incorporated by reference in the SNLA, but makes no reference to any FMLA regulations or to Section 2654. Advisory 98/1: An

15

Advisory from the Attorney General's Fair Labor and Business Practices Division on An Act Providing Employees Leave for Certain Family Obligations.

Even if the Court were to read the FMLA notice requirement into the SNLA, in this District "a private right of action does not exist for a violation of that notice provision." *Cormier*, 112 F.Supp.2d at 200. *Accord Jessie v. Carter Health Care Ctr., Inc.*, 926 F.Supp. 613, 617 (E.D. Ky. 1996). *See also Santos*, 996 F.Supp. at 93 (explaining that "any inadequacy found to exist with respect to notice" was irrelevant where plaintiff had taken 12 weeks leave and was unable to return at the expiration of leave). Even jurisdictions that recognize a private right of action for violation of the notice provision insist that there is no cause of action unless the deficiency in notice actually harmed the employee.[9] Courts must "take into consideration the reality of what would have happened had the notice been given, including whether or not the employee would have returned to work after taking leave." *Miller*, 342 F.Supp.2d at 514. In this case, Mellen made no effort to request an extension of her leave. Mellen Day 1 Tr. at 197; Mellen Day 2 Tr. at 42-43. If Mellen had wanted to extend her leave, she could have asked to use vacation time, Drolette Tr. at 102 (explaining that Mellen had 50 accrued vacation days), or any of the other types of leave available from the University. Drolette Tr. at 133. Mellen did not ask for authorization to take *any* form of additional leave, and there certainly is no reason to believe she would have requested leave under

---

[9] *See*, *e.g.*, *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999) ("We decline to interpret the FMLA as giving an employee a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act."); *Lacoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 220 (S.D.N.Y. 1997) ("[a]n employer's failure to provide adequate notice of FMLA procedures may constitute interference with an employee's FMLA rights if it causes the employee to forfeit FMLA protection"); *Fry v. First Fidelity Bancorporation*, No. CIV. A. 95-6019, 1996 WL 36910, at *6 (E.D. Pa. 1996) ("[a] violation of the handbook notice provision is actionable only if the inadequate notice effectively interfered with plaintiff's statutory rights").

the SNLA even if notices had been posted. Indeed, in this case there is no cause for speculation – Mellen herself confirmed in her November 19 letter that she would not return to work. Mellen Day 2 Tr. at 60-61; <u>Exhibit 25</u>.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants respectfully request that judgment enter for Defendants on all counts of the complaint.

TRUSTEES OF BOSTON UNIVERSITY
AND FRANCES A. DROLETTE

By their attorney,

_/s/ Crystal D. Talley_____
Lawrence S. Elswit
(BBO # 153900)
Crystal D. Talley
(BBO # 633759)
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
(617) 353-2326

Dated:  August 24, 2005