UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA MELLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>TRUSTEES OF BOSTON UNIVERSITY<br>AND FRANCES A. DROLETTE,<br><br>    Defendants. | Civil Action No. 04-10644-MEL |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In the summer of 2003, Plaintiff applied for FMLA leave through November 18, 2003, and was approved to take leave through November 18. Defendants' Exhibits 2 and 3. She was told repeatedly that she was expected to return to work on the following day November 19, or the University would conclude that she had voluntarily resigned. Plaintiff's Exhibit 17 at Section 312.7; Defendants' Exhibit 3. Plaintiff understood that she was expected to return to work on November 19. Mellen Day 2 Tr. at 55. Instead, she wrote a letter to Defendants on November 19 explaining that she had concluded that it was "unsafe" for her to return to work. Defendants' Exhibit 25. She admits that she did not return to work as scheduled, Mellen Day 2 Tr. at 69, and that she never requested additional leave of any kind. Mellen Day 1 Tr. at 197.

On November 20 Defendants did precisely what they said they would do: they notified Plaintiff that they had concluded that she had resigned her employment. Defendants' Exhibit 12. Plaintiff contends that by doing so Defendants violated her

substantive rights under both the FMLA and SNLA and discriminated against her for taking leave in the first place, and seeks judgment on these claims as a matter of law. She claims that Defendants' concerns about her performance – documented more than a month before she even decided to take FMLA leave – are actually evidence of a discriminatory animus and that the decision to accept her resignation is unlawful retaliation.

Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), however, is based on an assortment of mischaracterizations of both law and fact. Plaintiff received the full benefit of twelve weeks of FMLA leave, and did not request or receive approval to take more. Moreover, there are no undisputed facts from which this Court or any reasonable jury could infer that Defendants discriminated or retaliated against Plaintiff. Indeed, the undisputed facts and clear law confirm that there was no retaliation or discrimination. Plaintiff's Motion should be denied, and judgment should enter for Defendants on all counts of the complaint.

## I. DEFENDANTS DID NOT VIOLATE MELLEN'S SUBSTANTIVE RIGHTS

Plaintiff contends Defendants violated her substantive rights under the FMLA by wrongfully depriving Plaintiff of the full duration of her FMLA leave. Specifically, Plaintiff contends that the duration of her FMLA leave was extended by the holidays that fell during her leave. The law is clear, however, that holidays do not extend the duration of FMLA leave. On that ground, Plaintiff's Motion should be denied and Defendants' Motion for summary judgment should be granted.

Plaintiff further contends that she was entitled to additional leave of various forms even though she did not request it, and that Defendants failed to recognize that additional

2

leave when calculating her return-to-work date. Plaintiff did not request or receive approval for additional leave of any kind, and consequently cannot prove as a matter of law that she was entitled to the benefit of a later return date. For that reason, Plaintiff's Motion should be denied. Undisputed facts do, however, confirm that Plaintiff was required to return to work on her scheduled return-to-work date, November 19, and that Defendants were entitled to accept her resignation when she failed to do so. Consequently, judgment should enter for Defendants as a matter of law.

### A.     Defendants Provided Plaintiff With the Full 12 Weeks of FMLA Leave

Plaintiff contends that Defendants deprived her of "a total of 12 work weeks of leave" afforded her pursuant to 29 U.S.C. § 2612(a)(1) because they did not extend her leave by three days to account for the holidays that fell during her leave.[1] Plaintiff's Memorandum in Support of Her Motion for Summary Judgment (hereinafter "Pl. Mem.") at 8-10. The law is clear that holidays do not extend FMLA leave. 29 C.F.R. § 825.200(f). ("For purposes of determining the amount of leave used by an employee, the fact that a holiday may occur within the week taken as FMLA leave has no effect; the week is counted as a week of FMLA leave.")

The fact that Plaintiff's application for leave sought "intermittent leave" does not change that calculus. Plaintiff applied for intermittent leave in order to take leave in two separate blocks: "Aug. 4, 2003 thru Oct. 3, 2003; Oct. 28, 2003 thru Nov. 18, 2003, if needed," Defendants' Exhibit 2, and that application was granted. Defendants' Exhibit 3.

---

[1] Plaintiff makes reference to Columbus Day and claims that the leave should have been extended by four days rather than three, Pl. Mem. at 10, but as Plaintiff's calendar makes clear, Columbus Day fell during Mellen's vacation (October 6-27) and was not counted as part of her FMLA leave. *See* Plaintiff's Exhibit 11.

3

She did not, however, work a part- or reduced-time schedule. Section 825.203(c), which Plaintiff cites for the proposition that holidays should not have counted, provides clear examples of situations in which only the leave actually taken should be counted:

> For example, if an employee who normally works five days a week takes off one day, the employee would use 1/5 of a week of FMLA leave. Similarly, if a full-time employee who normally works 8-hour days works 4-hour days under a reduced leave schedule, the employee would use 1/2 week of FMLA leave each week.

29 C.F.R. 825.203(c). Plaintiff did not have that sort of reduced time schedule. Section 825.200(f) applies by its terms to all situations in which an employee takes full weeks off, as Plaintiff did.

Furthermore, Defendants explicitly informed Plaintiff that holidays would not extend the duration of her leave and Plaintiff did not question or otherwise contest that conclusion. Plaintiff wrote to the University on October 23, 2003 and explained that "I have extended the leave period by one day in light of the November 17 holiday." Defendants' Exhibit 5. The University responded on October 29 by explaining that "the fact that a holiday falls within a block of time taken as FMLA leave does not serve to extend the employee's allowed FMLA leave." Defendants' Exhibit 6. Plaintiff testified that she understood from this letter that her leave had not been extended, and that the University expected her to return to work on November 19 as scheduled. Mellen Day 2 Tr. at 42-43. She did not contact anyone at the University to discuss the issue or to request additional leave. *Id.*[2]

---

[2] Plaintiff appears to argue that Defendants waived the right to require Plaintiff to return on her scheduled return date because the October 29 letter was sent from Plaintiff's immediate supervisor, Frances Drolette, rather than the Director of Personnel, George Snowdon. Pl. Mem. At 10-11. However, even the case cited by Plaintiff, *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000), confirms the employee must have "reasonably relied" on misleading silence and have been harmed in order to claim estoppel. Plaintiff testified that she understood full well that she was expected to return to work on her scheduled return date, November 19. Mellen Day 2 at 42-43, 55.

4

Finally, Plaintiff argues that the University was required to continue her benefits unless and until she tendered an "unequivocal notice" of her intention not to return to work. Pl. Mem. at 11-12. That obligation, however, extends only throughout the obligation of the FMLA-covered leave. If an employee fails to return after the end of the authorized leave, the employer has no obligation whatsoever to continue the leave benefits or to reinstate the employee. *Cormier v. Littlefield*, 112 F.Supp.2d 196, 200 (D. Mass. 2000); *Barry v. Wing Mem. Hosp.*, 142 F.Supp.2d 161, 165 (D. Mass. 2001); *Green v. New Balance Athletic Shoe, Inc.*, 182 F.Supp.2d 128, 140 (D. Me. 2002).

### B.     Plaintiff Did Not Request Additional Leave of Any Kind

Plaintiff requested leave through November 18, Defendants' Exhibit 2; was approved for leave through November 18, Defendants' Exhibit 3; was told twice in October that she was expected to return on November 19, Defendants' Exhibits 6 and 11; and understood that she was expected to return on November 19. Mellen Day 2 Tr. at 55.[3] Nevertheless, Plaintiff now argues that she was not, in fact, required to return to work on November 19. Although she admits that she never requested additional leave of any kind or notified anyone at the University that she needed additional time to care for her mother, Mellen Day 1 Tr. at 197, Plaintiff claims she should have received the benefit of additional leave under the Massachusetts Small Necessities Leave Act ("SNLA"), Plaintiff's Stmt ¶ 69; the University's attendance policy, *id.* ¶ 136; sick leave, *id.* at ¶¶ 142-44; and vacation leave, *id.* at ¶¶ 145-154, or some combination of the foregoing. In

---

[3] Plaintiff wrote a letter on November 19 stating that she was "scheduled to return to work tomorrow" but would not return to work because she had "concluded that it is not safe." Defendants' Exhibit 25. Even assuming for purposes of this argument that the return date was actually November 20, Plaintiff admits that she did not return to work on that date. Mellen Day 2 Tr. at 68.

fact, under Plaintiff's latest calculation, she was not due back at work until December 8, 2005. *See* Pl. Mem. at 10 and n. 11.

Plaintiff should not get the benefit of leave she did not request and that was not approved. It is clear that leave under the University policies required prior written request and approval or, in the case of sick time, a call within 30 minutes of the start of the work day. *See*, *e.g.*, Personnel Manual (Plaintiff's Exhibit 17) at Section 301.6 ("Employees must submit a written request to their immediate supervisor at least two (2) weeks in advance of the desired Vacation Leave."); Section 302.8 ("Employees who are unable to report to work due to illness must personally notify their immediate supervisor within one-half (1/2) hour of the start of the workday."); Section 303.6 ("Employees must submit a written request for Personal Day absences to their immediate supervisor at least 24 hours in advance of the desired time off."); Section 309.6 ("Employees must submit a written request for the use of earned Compensatory Time Off to their immediate supervisor at least one (1) week in advance of the desired time off."); Section 313.5 ("Employees must submit a written request for Unpaid Time Off to their immediate supervisor at least 24 hours in advance of the desired time off."); Section 314.6 ("Employees must submit a written request for the Leave of Absence to their immediate supervisor at least one (1) month in advance of the desired time off."). Plaintiff did not request leave under any of these provisions, did not receive approval to take leave under any of these provisions, and cannot now ask the Court to proceed on the assumption that she did.[4]

---

[4] Even if the University had denied Plaintiff the benefit of one of its forms of leave Plaintiff would have no cause of action under the FMLA to enforce the University's policies. *See*, *e.g.*, *Green*, 182 F.Supp.2d at 135; *Holmes v. E.Spire Communications, Inc.*, 135 F.Supp.2d 657, 666-67 (D. Md. 2001). *See also* Defendants' Memorandum at 9.

6

The SNLA also requires employees to provide at least seven days' notice of their need for leave. M.G.L. ch. 149, § 52D(d). *Compare* 29 U.S.C. § 2612(e)(2)(B) (requiring at least 30 days' notice for FMLA leave where the need for leave is foreseeable). Even if Plaintiff had requested leave under the SNLA, the University may have requested additional medical confirmation that the leave was necessary, M.G.L. ch. 149, § 52D(e), or requested that she take leave at a different time, or declined to approve the leave if she did not provide sufficient notice. *See Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp. 988, 998-99 (N.D. Ga. 1996) (finding that employer was permitted to deny request for leave under FMLA where employee failed to provide sufficient notice). In a similar context, courts have held that "a plaintiff that neither exercised nor considered exercising a right under the FMLA, defendant cannot have interfered with plaintiff's exercise of his FMLA right, nor can it have retaliated against him for exercising it." *Speziale v. Bethlehem Area School Dist.*, 266 F.Supp.2d 366, 376 (E.D. Pa. 2003) (granting employer's motion for summary judgment). The same should hold for the SNLA. Plaintiff never requested leave under the SNLA and should not be given the benefit of that leave retroactively.

These notice provisions are not a mere formality. "An employer is entitled to expect that the employee will be cognizant of her own job responsibilities as well as the operations of the employer and will give notice as soon as practicable." *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). *See also Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) ("Notice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help."); *Kaylor*, 946 F.Supp. at 999 ("The FMLA does not give employees the unfettered right to

take time off subject only to their own convenience without any consideration of its effect upon the employer"). Here, the record is clear that Plaintiff's lack of communication about her return caused serious problems within SPH. As Drolette explained in her October 24 letter to Plaintiff, "[h]ad you managed the communication and planning regarding your vacation and leave professionally, I would have staffed the office differently to better prepare for these critical events." Defendants' Exhibit 11.

Plaintiff did not request leave under the SNLA, she did not notify the University that she needed additional time to care for her mother, she did not request vacation time or any other form of University leave, and she did not call in sick. But there is no mystery as to Plaintiff's whereabouts on November 19, the day she was scheduled to return. She was in Albany, New York with her mother that day and for the rest of the month. Mellen Day 2 Tr. at 69. At that point, she had not made alternative plans for her mother's care and was unable to return to work. Mellen Day 2 Tr. at 90, 96. In fact, she wrote a letter on November 19 – the day she was scheduled to return – explaining that she would not return to work because she considered it to be "unsafe." Defendants' Exhibit 25. Plaintiff chose not to return to work when she was required to do so, and knew full well that the consequence of that decision would be that the University would consider her to have resigned. Defendants' Exhibit 3. *See Gay*, 125 F.3d at 1436 ("When notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA.").

Plaintiff received the full benefit of twelve week's leave under the FMLA. That is all the leave she requested, and that is all the leave to which she was entitled. She did

8

not return to work as required when that leave expired, and Defendants were not required to reinstate her thereafter. The law is clear that the right to reinstatement is not triggered unless and until the employee returns from leave. *Barry*, 142 F.Supp.2d at 166. *See also* Defendants' Memorandum in Support of Their Motion for Summary Judgment at 9-12.

## II.     DEFENDANTS DID NOT RETALIATE OR DISCRIMINATE AGAINST PLAINTIFF

In order to make out a claim for retaliation, Plaintiff must adduce sufficient evidence that she availed herself of a protected right under the FMLA, she was adversely affected by an employment decision and there is a causal connection between her exercise of rights under FMLA and that adverse decision. *See*, *e.g.*, *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). Plaintiff clearly has not adduced sufficient undisputed facts from which the Court can conclude that those elements have been met. Indeed, the undisputed facts confirm that Plaintiff cannot adduce sufficient evidence, and judgment should enter for Defendants as a matter of law.

### A.     There Is No Direct Evidence of Retaliation or Discrimination

Plaintiff claims to put forth "direct evidence" of Defendants' retaliatory motive. *See* Pl. Mem. at 15-17. The law in this Circuit is clear, however, that "direct evidence" is limited to "statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60-61 (1st Cir. 2000). *Accord Kirk v. Hitchcock Clinic*, 261 F.3d 75, 78-79 (1st Cir. 2001). *See also Kaylor*, 946 F.Supp. at 1000 ("[O]nly the most blatant remarks which evince the intent to discriminate against individuals who invoke their FMLA rights can constitute direct evidence of FMLA discrimination.").

9

Plaintiff alleges absolutely nothing of the kind. Each of the "examples" identified by Plaintiff is indirect evidence, at best. For example, Plaintiff alleges that her performance was criticized, that Defendants were "unhappy" about her attendance, that Defendants "failed to correct Mellen's calculation of [the leave's] duration,"[5] and that Drolette and Meenan were more "personally" involved in the decision to accept Plaintiff's resignation than was typical. Pl. Mem. at 15-17. There is no allegation whatsoever that any decision maker made any statement that reflected animus against Plaintiff because she had taken FMLA leave.

### B.     There Is No Indirect Evidence of Discrimination or Retaliation

Nor has Plaintiff adduced sufficient indirect evidence of discrimination or retaliation to warrant summary judgment. Although Plaintiff repeats and recharacterizes Defendants conduct in a variety of different ways, the allegations concerning retaliation and discrimination amount to the following:

- In May 2003, Drolette documented concerns about Plaintiff's performance and informed Plaintiff that she would no longer be permitted to work from home on Fridays;

- Drolette discussed restructuring the department and Plaintiff's role within the department with the Director of Personnel for the Medical Campus and others;

- Drolette sent Plaintiff a letter in October 2003, while Plaintiff was on vacation, outlining Drolette's concerns with Plaintiff's lack of communication and professionalism concerning the duration of her leave; and

- Defendants accepted Plaintiff's resignation on November 20, 2003 after Plaintiff failed to return to work on November 19, her scheduled return date.

---

[5] Many of these alleged "examples" are demonstrably false, as detailed in Defendants' Response to Plaintiff's Statement of Undisputed Material Facts. For example, Defendants wrote to Plaintiff twice in October to confirm that her scheduled return date was November 19. Defendants' Exhibits 6 and 11. Defendants respectfully urge the Court to review Defendants' Response to Plaintiff's Statement of Undisputed Material Facts carefully.

10

These circumstances do not permit an inference of discrimination or retaliation as a matter of law, and Plaintiff's Motion should be denied.

1. Conduct Preceding Plaintiff's FMLA Leave Cannot Support an Allegation of Discrimination or Retaliation

Plaintiff claims that Defendants' actions in the spring of 2003 are evidence of discrimination against Plaintiff for taking FMLA leave. Specifically, Plaintiff alleges that the decision that Plaintiff would no longer be permitted to work from home on Fridays, and Drolette's documented concerns relating to Plaintiff's performance were the product of retaliation and/or discrimination. *See* Pl. Mem. at 15-16, Plaintiff's Stmt. ¶¶ 25-33; 37-62. However, both of those decisions preceded Plaintiff's decision to take FMLA leave, and therefore cannot be evidence of retaliation or discrimination as a matter of law.

The law is clear that in order to make out a claim for retaliation or discrimination under the FMLA the Plaintiff must have "availed herself of a protected right under the FMLA." *Hodgens*, 144 F.3d at 661. *See also* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave."). It is undisputed that Plaintiff did not avail herself of the FMLA until June 2003, and did not use FMLA leave until August 2003. Consequently, Defendants' conduct that precedes Plaintiff's request for FMLA leave cannot be the basis for a claim of retaliation or discrimination as a matter of law.

Plaintiff admits she did not decide to take leave under the FMLA until June 2003, Mellen Day 1 Tr. at 175-76, and did not tell Drolette or anyone else at the University about that decision until June 20. *Id.* Drolette had documented her concerns with Plaintiff's performance and informed Plaintiff that she could not longer work from home

11

on Fridays at least as early as May 13, 2003. Defendants' Exhibit 15.[6] While it is true that Plaintiff took four weeks' of vacation leave in March 2003 "to spend some quality time with [her] aging mother," Defendants' Exhibit 30, that vacation leave was not taken pursuant to the FMLA, Plaintiff's Stmt, p. 7 n.2, and there is nothing in the record to suggest that Defendants were or should have been on notice that Plaintiff had requested or was qualified for leave under the FMLA. Consequently, Defendants' conduct that predates Plaintiff's decision to take FMLA leave cannot permit an inference of discrimination or retaliation under the FMLA.

    2.    Allegations Concerning Plaintiff's Performance Issues Do Not Permit an Inference of Discrimination or Retaliation

Plaintiff alleges repeatedly that her performance and attendance had never been criticized prior to her March vacation with her mother, and urges the Court to conclude that post-vacation concerns must be the product of discriminatory animus. The evidence does not support this conclusion. Plaintiff's new supervisor, Frances Drolette, set legitimate expectations that were different from those of her predecessor, Dzidra Knecht. Plaintiff did not meet those expectations, and as a result Drolette documented her concerns.

As courts have recognized repeatedly, "[i]t is simply stating the obvious to observe that what may have satisfied one management regime does not necessarily satisfy its successor." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 474 (6th Cir. 2002) (affirming grant of summary judgment for employer). *See also Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Different supervisor may impose different standards of behavior

---

[6] Indeed, it was shortly after Drolette's May 13, 2003 e-mail that Plaintiff met with the Provost of the Medical Campus to complain that "the atmosphere at SPH had changed" since Drolette arrived and to tell him that she planned to look for another job. Mellen Day 2 Tr. at 8-10.

12

and a new supervisor may decide to enforce policies that a previous supervisor did not consider important.").

It is undisputed that SPH was growing and facing new challenges in the early 2000s. *See*, *e.g.*, Meenan Tr. at 22-24. Drolette was hired in September 2002 and understood that she was responsible for improving the performance of those in her office. Drolette Tr. at 43 ("the Dean wasn't expecting me to replicate the standard that Dzidra Knecht had at the School of Public Health. Quite to the contrary."). After working with Plaintiff for six to eight months, Drolette began to develop concerns about specific aspects of Plaintiff's performance. She discussed those concerns with Plaintiff at a meeting in early May and, at Plaintiff's request, documented those concerns later that month. Defendants' Exhibit 15. Drolette detailed her "concerns regarding [Plaintiff's] role in the financial management of the school" including "several loose ends" and "apparent uncertainty about the bottom line." Drolette identified several key objectives, and urged Plaintiff to "provide input regarding [her] perceptions of key objectives, projects and priorities" as well as to "identify specific professional development and training needs that should be addressed." *Id.*

It is also clear that Drolette did not single Plaintiff out in any way. For example, Plaintiff admitted that no one who reported to Drolette was permitted to work from home during the regular workweek. Mellen Day 1 Tr. at 49. *See also* Snowdon Tr. at 104 (confirming that no other employee who reported to Drolette had a "flex" schedule that permitted working from home regularly); Defendants' Exhibit 15 (explaining that Drolette could not support working from home one day per week "unilaterally for all staff given my goal to have our office accessible and open to our 'customers' during the

13

University business hours. A regular flex schedule for anyone would be counter to that goal . . ."). As is often the case, Plaintiff's allegations concerning her new supervisor do not permit an inference of retaliation or discrimination. It "merely illustrates a 'clash of cultures' between the old and the new management style." *Peters*, 285 F.3d at 474.

### 3. Plaintiff Was Not Subject To An "Adverse Employment Action"

An adverse employment action requires that an adverse *action* be taken against an employee. 29 C.F.R. § 825.220(c). As the First Circuit has explained:

> Not every comment about problems created by the use of leave can fairly be treated as an adverse employment action violating the FMLA. An employee's use of leave, while fully legitimate, can cause serious problems for the employee's performance of his tasks and require an employer to implement changes in how jobs are assigned and who does what within the organization. What is prevented is adverse *action* against the employee for using the protected leave.

*Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 10 (1st Cir. 2001) (emphasis in original). Even negative performance evaluations do not rise to the level of an adverse employment action. *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998). As the Seventh Circuit explained:

> If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit. . . . We also would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so. Employees would be left in the dark as to how they could improve their work performance, and employers would be less able to establish the fact that poor performance, rather than some unlawful motivation, prompted a decision to fire, demote, etc.

*Sweeney*, 149 F.3d at 556-57.

Whatever concerns Drolette and others may have had with Plaintiff – or even discussed among themselves – no action was taken against Plaintiff as a result of those

14

conversations. *See Keeler*, 238 F.3d at 10. Indeed, Drolette had scheduled meetings with Plaintiff upon her return to continue the discussion of performance issues and objectives. Defendants' Exhibit 26. Plaintiff essentially asks the Court to assume that Defendants *would* have taken some adverse action against her upon her return to work. The Court cannot make that inference, however, because Plaintiff failed to return to work (without justification) and we cannot now speculate about what may have happened. *See Barry*, 142 F.Supp.2d at 166 (explaining that plaintiff cannot claim to have suffered a constructive discharge unless she experienced "harassment so severe and oppressive that staying on the job while seeking redress is intolerable").

Drolette's October 24 letter, the most specific written criticism of Plaintiff after she requested FMLA leave, also was not an adverse employment action. Even if the letter were characterized as a negative performance review, that does not constitute an adverse employment action for the very important policy reasons described by the Court in *Sweeny*, 149 F.3d at 556-57. *Accord BTE Prods. Corp. v. Stewart*, 421 Mass. 22, 34 (1995). *See also Barry*, 142 F.Supp.2d at 166 (explaining that letter sent to employee while on leave "may have been insensitive" but "was not so insensitive that it prevented [plaintiff] from working while seeking her FMLA remedies"). The letter was sent to Plaintiff while she was out on vacation, Plaintiff's Exhibit 11, and professionally articulated legitimate concerns about Plaintiff's failure to communicate clearly about the timing of her leave and reiterated performance concerns that were documented well before Plaintiff decided to take FMLA leave. Defendants' Exhibit 11. The letter described "an ambitious calendar of projects to complete in a short-window of time upon [Plaintiff's] return" and emphasized the importance of discussing the issues further when

Plaintiff returned.  *Id.*  In short, there is nothing in the October 24 letter or elsewhere in the record that amounts to an adverse employment action taken against Plaintiff.  Plaintiff cannot make out a claim for retaliation and her Motion should be denied.

        4.    <u>Defendants Did Not Accept Plaintiff's Resignation In Retaliation for Her Taking FMLA Leave</u>

Plaintiff also contends that Defendants' decision to accept her resignation when she did not return to work as required amounted to an adverse action in retaliation for her exercise of rights under the FMLA.  The record simply does not bear that out.  Defendants' FMLA policy specifies that "[a]n employee who fails to return to work by the expected return date will be considered to have resigned voluntarily from the University."  Plaintiff's Exhibit 17 at Section 312.7.  The University notified Plaintiff individually that she would be considered to have resigned if she did not return on her expected return date in the letter approving her FMLA leave.  Defendants' Exhibit 3.  When Plaintiff did not return, the University did precisely what it said it would do.  If Plaintiff was concerned that Defendants might ultimately retaliate against her because she took FMLA leave, she was required by law to return to work and see *whether* Defendants took inappropriate action or not.  *Keeler*, 238 F.3d at 10 (explaining that employee must "stay[] on the job while seeking redress" unless she has proven constructive discharge).  She cannot now assume what might have happened, and seek damages on that basis.

16

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for Summary Judgment be denied, and that Defendants' own motion for summary judgment be granted.

                    TRUSTEES OF BOSTON UNIVERSITY
                    AND FRANCES A. DROLETTE

                    By their attorneys,


                    _/s/ Crystal D. Talley_____
                    Lawrence S. Elswit
                    (BBO # 153900)
                    Crystal D. Talley
                    (BBO # 633759)
                    Boston University
                    Office of the General Counsel
                    125 Bay State Road
                    Boston, Massachusetts  02215
Dated:  October 14, 2005        (617) 353-2326