UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 OCT 14 P 3: 33

No. 04-10644-MEL

U.S. DISTRICT COURT
DISTRICT OF MASS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**LINDA MELLEN,**
      **Plaintiff,**

**v.**

**TRUSTEES OF BOSTON
UNIVERSITY and FRANCES
A. DROLETTE,**
      **Defendants.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF DISPUTED MATERIAL FACTS WARRANTING DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with Fed.R.Civ.P., R. 56(a), and Local Rule 56.1, plaintiff Linda

Mellen submits this Statement of Disputed Material Facts Warranting Denial of

Defendants' Motion for Summary Judgment. Relatedly, Mellen moves to strike

defendants' unsubstantiated assertions of fact under Local Rule 56.1. *See* defendants'

Assertions *infra*, at Nos. 9, 12, and 15.

### A. MELLEN'S FMLA LEAVE

1. **Defendants' Assertions**: Linda Mellen "requested leave from 'Aug. 4, 2003

through Oct. 3, 2003; Oct. 28, 2003 thru Nov. 18, 2003, if needed,'" *see* page 1 of

Defendants' Statement of Undisputed Material Facts; and, Mellen "never asked for any

leave beyond November 18, 2003." *Id.* at p. 2.[1]

---

[1]    "Defendants' Assertions" are referenced here by page number rather than paragraph number because defendants did not number them.

**Contrary Record Facts**: The only reason Mellen entered a November 18, 2003 end-date on her application was because she was (incorrectly) instructed to use that date *by the University's Personnel Office*. *See* Tab 1 to defendants' Exhibits, Mellen Deposition Day 1, p. 196. *See also* Tab 11 to Plaintiff's Exhibits, Calendar.

In any case, Mellen's consistent request was for the "maximum amount" of family leave. *See* Tab 1 to defendants' Exhibits, Mellen deposition Day 1, pp. 177-179, 181-182, 195, 196. *See also* Tab 2 to defendants' Exhibits, Mellen's Application with cover note ("I have applied for the maximum leave . . . "). *See also* Tab 19 to defendants' Exhibits, defendant Drolette's email of July 18, 2003 to Mellen ("I understand (and appreciate the need) to apply for the maximum amount of leave . . ."). *See also* Tab 6 to Plaintiff's Exhibits, Drolette deposition, page 147, line 15 – page 148, line 4 (hereinafter, "[page number], [line number]")(Drolette knew by mid-July 2003 that Mellen was applying for the maximum amount of family leave). *See also* Tab 3 to Plaintiff's Exhibits, Snowdon deposition, 71, 7 – 72, 21 (Snowdon knew that Mellen was requesting family leave through November 20, 2003).[2]

2. **Defendants' Assertion**: Mellen's "July 17 application is the only request for leave that Mellen ever submitted . . . and she never contacted anyone at the University to

---

[2]      As addressed in the legal memoranda submitted by Mellen (the first filed on August 26, 2005 in support of Mellen's motion for summary judgment, the second filed today in opposition to defendants' motion for summary judgment), Mellen did not need to specifically invoke the FMLA or SNLA to satisfy her obligation to give notice. Once she gave notice of her need for family leave and of leave-qualifying circumstances, defendants – not Mellen - had the duty to determine whether the leave was sought under the FMLA and SNLA, and the duty to request such information from Mellen as defendants reasonably needed to confirm her eligibility.

ask for additional leave." *See* pp. 1-2 of Defendants' Statement of Undisputed Material Facts.

**Contrary Record Facts**: In fact, the record evidence establishes that Mellen and defendants had several communications regarding Mellen's request and her need for the "maximum" amount of family leave, and that Mellen submitted medical documentation that supported her need to take family leave of a maximum duration.

For example, on or about July 17, 2003, Mellen submitted her formal notice of family leave to defendants with a note that provided in part, "I have applied for the maximum leave . . ." *See* Tab 2 to defendants' Exhibits. In addition, on or about August 8, 2003, Mellen submitted medical documentation to BU, at BU's request, regarding her mother's condition. The documentation reiterated Mellen's request for the "maximum" amount of family leave, and her calculation that such leave would extend through November 20, 2003. *See* Tab 7 to defendants' Exhibits, third page. *See also* Snowdon deposition 72, 18 – 74, 4 (Snowdon knew that Mellen requested through November 20, 2003 for family leave). The University's Personnel Office, however, failed to make any effort to communicate with Mellen regarding her calculation of family leave before it terminated her. *See* Snowdon 73, 2 – 6, and 13 – 17 (Snowdon made no effort to communicate with Mellen or to correct her calculation).

As well, in late October 2003, as a consequence of a letter from Mellen, BU knew that Mellen had calculated her family leave as running through November 20, 2003, *see* Snowdon 78, 17 – 79, 8, but again BU did not take any steps to "correct" Mellen's alleged misunderstanding. *See also* Tabs 4 and 5 to defendants' Exhibits, October 2003 correspondence from Mellen to defendant Drolette.

3

With regard to SNLA leave, defendants made no effort to inquire whether Mellen's August 8th submission constituted her request for SNLA leave. *See* Snowdon 73, 18 – 74, 4.

3. **Defendants' Assertion**: Mellen was approved for family leave through November 18, 2003. *See* p. 2 of Defendants' Statement of Undisputed Material Facts.

**Contrary Record Facts**: As observed at Contrary Record Facts No. 1 *infra*, the only reason a November 18, 2003 end-date was entered on Mellen's application was because the University's Personnel Office (incorrectly) instructed Mellen to use that date. *See* Tab 1 to defendants' Exhibits, Mellen Deposition Day 1, p. 196.

In any case, defendants miscalculated the duration of Mellen's FMLA leave; they misinformed Mellen as to the end-date to her family leave; and they failed to take into account Mellen's entitlement to additional family leave under the SNLA. Specifically, Mellen's intermittent FMLA leave privileged her to be out of work through November 20, 2003; and her SNLA leave privileged her to be out of work through November 25, 2003. *See* Tab 11 to Plaintiff's Exhibits.[3] *See also* Snowdon deposition 67, 17 – 68, 8 (BU did not take the SNLA into account when calculating Mellen's family leave, and took no steps to assure itself that Mellen was afforded SNLA benefits).

---

[3]     Indeed, to extend her care of her mother, Mellen had requested – and defendants had approved – her using vacation time November 26th (the Wednesday before the University's 2-day Thanksgiving holiday), and December 1-5, 2003. Given this, Mellen's actual return-to-work date was December 8, 2003. *See* Tab 11, Calendar. *See also* Tab 7 to Plaintiff's Exhibits, Mellen Affidavit, para. 12.

4

**4. Defendants' Assertion**:  Mellen "never called Snowdon or anyone else at the University to ask questions or clarify any portion of the [July 31, 2003] letter." *See* p. 2 of Defendants' Statement of Undisputed Material Facts.

**Contrary Record Facts**:  While plaintiff admits that she did not "call" any University official regarding the duration of her leave, Mellen did communicate periodically by other means with defendants during her family leave, regarding the duration of her family leave. *See* No. 2 *infra*, Contrary Record Facts.

**5. Defendants' Assertion**: Drolette instructed Mellen in late October 2003 that she (Mellen) would not be permitted the benefit of the November 17, 2003 University holiday. *See* p. 3 of Defendants' Statement of Undisputed Material Facts.

**Contrary Record Facts**:  Although defendant Drolette did so instruct Mellen, Drolette's instruction was, as a matter of law and fact, both erroneous and discriminatory.

First, Mellen was privileged under the combined allowances of Federal and Massachusetts law to remain on family leave through November 25, 2003. *See* Contrary Record Facts, No. 3 *infra*. *See* Tab 11 to Plaintiff's Exhibits. *See also* footnote 2 *infra*.

Second, because BU approved Mellen for *intermittent* family leave, Mellen had the right under Federal (and Massachusetts law) to be charged only with workdays "actually taken" by her, in accordance with 29 CFR 825.205(a). The University holiday of November 17, 2003 was not a University workday. Therefore, Mellen was not required to expend a day of family leave to excuse her absence that day.

Third, BU's written personnel policy provided that employees were entitled to holiday leave if they were on authorized leave immediately before the holiday. *See* Tab 3

5

to Plaintiff's Exhibits, Snowdon 48, 6 – 15 (BU policy entitles employees on authorized paid leave or who have authorized paid absences to holiday leave). *See also* Tab 17 to Plaintiff's Exhibits, BU Personnel Manual, s. 308. Mellen *was* on authorized paid leave immediately prior to the November 17th University holiday, and therefore qualified for holiday leave. Therefore, Mellen did not need to use one of her 63 FMLA/SNLA days to excuse her absence on November 17th.[4]

Fourth, BU did not notify Mellen that the University holidays of Labor Day, Columbus Day, and Veterans' Day would count as part of her family leave. *See* Snowdon 63, 19 – 64 – 6 (Snowdon never told Mellen that these holidays would count against her family leave); Drolette 145, 6 – 19 (Drolette did not give Mellen such notice either). This failure to give notice both, (a) belies defendant Drolette's late October 2003 claim that the November 17th University holiday *would* count against Mellen's family leave, and (b) is probative of Drolette's retaliatory intentions. *See also* 29 CFR 825.208(c)(an employer who wants paid leave taken under an existing leave plan to be counted as FMLA leave must make the designation and give notice to the employee before the employee's FMLA leave begins). *See also Nusbaum v. CB Richard Ellis, Inc.*, 171 F.Supp.2d 377, 385-386 (D.N.J. 2001)("[I]t appears to this Court that the purpose of [the DOL regulations] is to ensure that employers allow their employees to make informed decisions about leave . . . [t]he overall intent of the FMLA is lost when an

---

[4]    If defendants are arguing that employees on family leave are not entitled to the holiday leave benefits afforded University employees absent as a result of authorized (but non-family) leave immediately prior to a University holiday, then they effectively concede a discriminatory application of the University's personnel rules to the prejudice of Mellen and other employees on family leave.

employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations").

    **6. Defendants' Assertion**: After Drolette's October 29, 2003 letter, Mellen "did not contact anyone at the University to discuss the issue [of her return-to-work date] or to request additional leave." *See* p. 4 of Defendants' Statement of Undisputed Material Facts.

    **Contrary Record Facts**: *See* Contrary Record Facts, Nos. 1-4 *infra.*

    **7. Defendants' Assertion**: Mellen "did not . . . notify anyone at the University that she believed the duration of her leave had been miscalculated." *See* p. 4 of Defendants' Statement of Undisputed Material Facts.

    **Contrary Record Facts**: *See* Contrary Record Facts, Nos. 1-4 *infra.*

## B. MELLEN'S PERFORMANCE ISSUES

    **8. Defendants' Assertion**: Dean Meenan "had concerns about [Mellen's] ability to adapt to that position [of Financial Manager]." *See* p. 5 of Defendants' Statement of Undisputed Material Facts.

    **Contrary Record Facts**: In fact, Dean Meenan testified that Mellen was capable of continuing as Financial Manager, and that he found her performance in that role to be "satisfactory," and he told her so. *See* Tab 5 to Plaintiff's Exhibits, Meenan 25, 9 – 26,

10.[5] *See also* Tab 1 to defendants' Exhibits, Mellen deposition, Day 2, p. 13 (Meenan never spoke about any concerns he had with Mellen's performance with Mellen). *Accord* Plaintiff's Statement of Undisputed Material Facts, Nos. 25-33 (from her promotion to Financial Manager in 1998 until March 2003, when she began taking leave to care for her mother, Mellen's work performance, productivity, and willingness to work as a team player was consistently regarded as very good).

9. **Defendants' Assertion**: "Both Meenan and Drolette made clear that they intended to impose more rigorous standards on SPH employees in order to meet the demands of exponential growth." *See* p. 5 of Defendants' Statement of Undisputed Material Facts.

**Objection and Request to Strike**: Defendants' failure to provide "page references to affidavits, depositions and other documentation" for this assertion of fact in accordance with Local Rule 56.1 warrants the striking of the assertion. In any case, the excerpt of the Drolette deposition attached at Tab 14 to defendants' Exhibits does not support this assertion.

10. **Defendants' Assertion**: Starting in the spring of 2003, Drolette met with Mellen for the purpose of documenting Drolette's "concerns" regarding Mellen's work performance. *See* pp. 5-6 of Defendants' Statement of Undisputed Material Facts.

**Supplemental Record Facts**: This assertion, although phrased innocuously by defendants, undermines defendants' argument. *See also* Plaintiff's Statement of

---

[5]     Defendants' excerpt of the Meenan deposition does not contain these pages. *Compare* Tab 13 to defendants' Exhibits with Tab 5 to plaintiff's Exhibits.

Undisputed Facts, Nos. 34-51 (only *after* Mellen began to actively care for her ailing

mother in March 2003 did Drolette began her campaign against Mellen, by (a)

questioning, criticizing, and demeaning Mellen's work performance, productivity, and

professionalism, and then documenting the same; (b) taking away Mellen's flex schedule;

and (c) reducing her own (Drolette's) expectations for Mellen's work). *Accord* Snowdon

86, 11 – 15 (Drolette was not happy with Mellen's family-related absences in 2003, even

before Mellen began using her formal family leave in August 2003).[6]

## C. MELLEN'S COMMUNICATION ISSUES

**11. Defendants' Assertion**: Defendants seem to suggest that defendant Drolette

was not aware until late June 2003 that Mellen needed to care for her ailing mother, a

family-leave-qualifying situation. *See* p. 6 of defendants' Statement of Undisputed

Material Facts.

**Contrary Record Facts**: Drolette knew no later than February 2003 that Mellen

was using her vacation time in March 2003 to be with her mother, *see* Drolette

deposition, 48, 4 – 14; and knew no later than May 2003 that Mellen's mother was ill.

*See* plaintiff's Statement of Undisputed Material Facts, No. 52; Snowdon deposition 108,

11 – 109, 8.  As well, BU knew that Mellen's time off in March 2003 was necessary so

that she could attend to her mother. *See* Meenan deposition, 22, 3 – 14.

---

[6]     As addressed at length in plaintiff's memoranda, the fact that defendant Drolette
began to "paper" her criticisms of Mellen immediately on the heels of Drolette's March
2003 time with her mother is strong evidence of Drolette's discriminatory animus. *See
Danielson v. City of Lorain*, 938 F.2d 681, 683-84 (6th Cir. 1991)(if evidence shows that
employer began creating paper trail to mask his discriminatory animus for terminating
employee, the employee "would be entitled to judgment no matter how inadequate her
work performance was").

**12. Defendants' Assertion**: "Mellen left the [FMLA] application on Drolette's chair after Drolette had left for the day." *See* p. 6 of defendants' Statement of Undisputed Material Facts.

**Objection and Request to Strike**: Defendants' failure to provide "page references to affidavits, depositions and other documentation" for this assertion of fact in accordance with Local Rule 56.1 warrants the striking of the assertion.

**13. Defendants' Assertion**: Defendants seem to imply that once apprised of Mellen's upcoming family leave, defendant Drolette's only response was her implementation of an objective plan to manage Mellen's absence. *See* p. 7 of defendants' Statement of Undisputed Material Facts.

**Supplemental Record Facts**: The record facts establish that defendant Drolette's response to Mellen's imminent family leave can be more accurately described as antagonistic, characterized by a chronic sniping at and about Mellen. *See* Plaintiff's Statement of Undisputed Material Facts, Nos. 54–64, with respect to Drolette's response to Mellen's family situation, including:

- Drolette complained that Mellen had "many absences since budget meeting; four sick days and one vacation [day] since May," *see* Snowdon 110, 3 – 4; and 111, 2 – 9;

- Drolette complained that Mellen was using "[a]lot of vacation time", and complained that Mellen's accrual of vacation time was excessive, *see* Snowdon 94, 1 – 19;

- Drolette was not happy with Mellen's family-related absences, *see* Snowdon 86, 11 – 15;

- Drolette complained that "it was challenging to plan and manage [her] office objectives" given Mellen's "sporadic absences", *see* Snowdon 86, 2 – 7, and Complaint and Amended Answer, para. 20;

- Drolette complained that Mellen was "disconnect[ed]" from her "professional responsibility", and openly questioned "how will [Mellen's] responsibilities get covered?" *see* Snowdon 112, 22 – 115, 1;

- Drolette complained that Mellen's absences affected Drolette's decisions about her (Drolette's) office personnel, *see* Drolette 147, 9 – 14; and,

- Drolette was "frustrated" at the prospect of Mellen's upcoming family leave, and believed that Mellen's leave would place a difficult burden on SPH to accomplish its objectives over that period, *see* Snowdon 116, 1 – 10.[7]

In addition, although Mellen's former supervisor Dzidra Knecht had no performance, attendance, or productivity issues with Mellen while supervising Mellen for 4 years, Drolette raised each of these issues with Mellen following the March 2003 vacation Mellen took with her ailing mother. *See* Drolette 40, 2 – 42, 7; Mellen Affidavit, para. 9, at Tab 7 to plaintiff's Exhibits.

**14. Defendants' Assertion**: Defendants seem to acknowledge that they negatively took into account Mellen's alleged "failure" to attend to her job responsibilities immediately prior and during her family leave. *See* p. 7 of Defendants' Statement of Undisputed Material Facts.

---

[7]     These negative and antagonistic statements made by Drolette to Snowdon "behind the scenes" provide a basis for questioning the sincerity of Drolette's emailed concerns about Mellen's mother. *Accord* plaintiff's Statement of Undisputed Materials Facts, Nos. 81-82 (just two weeks into Mellen's family leave, Drolette proposed terminating Mellen, eliminating her position, or negotiating a resignation/severance agreement with her).

**Supplemental Record Facts**:  Defendants negatively considered Mellen's absences when considering her work and productivity as Financial Manager.  *See* Plaintiff's Statement of Undisputed Material Facts, Nos. 44-51, 56, 58-62, 83, 86, 88, 92, 105-110.

Defendants negatively considered the fact that Mellen was not producing work during her family leave.  *Id.* at Nos. 83, 86, 88, 105-110.  *See also* Tab 29 to defendants' Exhibits, p. 2 (Drolette's August 18, 2003 email to Mellen, transmitting to Mellen a lengthy assignment of work for Mellen to perform during her family leave).  *See also Sherman v. AI/FOCS, Inc.,* 113 F.Supp. 2d 65, 70 (D.Mass. 2000)("[t]he ability to take FMLA leave is not conditioned upon the willingness of an employee to remain 'on call' to the employer[;] [o]f the many prerequisites to FMLA leave, the convenience of the employer is not one").[8]

**15. Defendants' Assertion**: "Mellen also neglected to complete other important tasks – or even to let anyone know that she had failed to complete them – before she went out on leave."  *See* p. 7 of defendants' Statement of Undisputed Material Facts.

**Objection and Request to Strike:**  In that the cited record references do not support defendants' assertions of fact, as required by Local Rule 56.1, the assertions should be stricken.  More specifically, the record references do not establish that the "tasks" were "important"; and do not establish that that Mellen "neglected" to "let anyone know" she had not completed them.

---

[8]    Defendants' frustration that Mellen's family situation was interfering with her work may explain why defendants were so "quick to the trigger" in terminating Mellen. It may also explain their failure to conduct any sort of inquiry on November 19th or 20th as to why Mellen did not appear for work on November 19th.

Notably, the cited record references tend to establish that Mellen worked 12-14 hour days prior the commencement of her family leave. They also tend to establish that Drolette neither appreciated Mellen's professional commitment to her work nor Mellen's success in completing all the work Drolette saddled her with prior to Mellen's family leave. *See also* Drolette deposition, Tab 6 to Plaintiff's Exhibits, at 187 (Drolette now admits that Mellen's scheduling of her family leave was "responsible and professional").

**16. Defendants' Assertion**: After accurately conceding that Drolette approved Mellen's October 2003 vacation, *see* p. 8 of defendants' Statement of Undisputed Material Facts, defendants chide Mellen for causing "confusion" regarding that vacation. *See* pp. 7-8 of Defendants' Statement of Undisputed Material Facts.

**Supplemental Record Facts**: Drolette was not confused regarding her October 2003 vacation, because she knew that defendants had approved it. Specifically, defendant Drolette approved Mellen's October 2003 during an April 23, 2003 meeting, as Mellen confirmed in writing the following week. *See* Exhibit 22 to defendants' Exhibits (Mellen's email to Drolette of April 29, 2003: "Thank you for approving my vacation leave for the period October 6 through October 27"). In her reply, Drolette did not correct or dispute Mellen's confirmation. *Id.* (Drolette's April 30, 2003 reply email). Subsequently, during a May 19, 2003 meeting with Mellen, BU's Director of Personnel confirmed Drolette's prior approval of Mellen's October 2003 vacation. *See* Mellen's Affidavit in Opposition to defendants' Statement of Undisputed Material Facts, attached hereto. *See also* Tab 25 to defendants' Exhibits, p. 1-2 (Mellen's November 19, 2003 letter to defendant Drolette).

Mellen, further, did not receive any communication from defendants at any time prior to or during October 2003 that rescinded defendants' approval of her October vacation, or which communicated to her that she had not satisfied the condition(s) that defendants now contend was/were tied to their approval. *See* Mellen's Affidavit in Opposition to Defendants' Statement of Undisputed Material Facts, attached hereto. Similarly, defendants fail to identify any University/Drolette communications to Mellen by which Mellen's October 2003 vacation was rescinded or by which Mellen was informed that the alleged conditions to her vacation had not been satisfied.

Under these circumstances, the fact that defendants were "confused", *see* Snowdon 76, 16 – 77, 11 ("[W]e [Drolette and Snowdon] had a discussion regarding confusion over Linda's vacation in the midst of the leave . . . "), cannot be attributed to Mellen.[9] In fact, Mellen had a reasonable basis to believe that defendants' July 31, 2003 approval of her intermittent family leave, *see* Exhibit 3 to defendants' Exhibits, p. 3, was a tacit reiteration that her October 2003 vacation had been approved. Indeed, Mellen's family leave – which defendants expressly concede was "intermittent" family leave – would not have been "intermittent" absent Mellen's October 2003 vacation. *See* plaintiff's Statement of Undisputed Material Facts, Nos. 63-68 (defendants approved Mellen's request for the maximum amount of family leave, to be taken on an *intermittent* basis).[10]

---

[9]   If the confusion is attributed to anyone, Drolette would be the primary suspect, given that she spoke vaguely of conditions to Mellen's taking vacation leave and then failed to communicate before she (Drolette) left on vacation in mid-July 2003 whether she thought the conditions had been met.

[10]   The deposition exchanges between plaintiff's counsel and BU's Director of Personnel, George Snowdon, on this issue could not be more clear:

17. **Defendants' Assertion**: Defendants selectively quote certain passages from Drolette's disciplinary letter of reprimand to Mellen, dated October 24, 2003. *See* pp. 8-9 of defendants' Statement of Undisputed Material Facts.

**Supplemental Record Facts**: Drolette's disciplinary letter of reprimand took Mellen to task for her failings in "communication, initiative and ownership. At the time she received the letter, however, Mellen had not been present at BU or actively engaged as Financial Manager since August 3, 2003, because of her family leave. *See* Tab 11 to defendants' Exhibits; and Complaint and Amended Answer, para. 33. Given this, the inference is compelled that Drolette was reprimanding Mellen for not doing her job as Financial Manager during her family leave.

Drolette's letter also contained a direct threat to Mellen's continued employment: "If you are not able to make prompt and substantial improvements in these areas when you return, we will have to discuss whether it is mutually beneficial for you to continue

---

**Q:** You approved, or your office approved, in 2003, intermittent FMLA leave for Linda Mellen; isn't that correct?

**A:** Yes.

**Q:** And again, referring to Exhibit 6 [Tab 10 to plaintiff's exhibits in support of her Motion for Summary Judgment], your letter of July 31. Page three, you checked the line next to the sentence[,] provided that you received proper medical verification, etc., etc; do you see that sir?

**A:** Yes.

**Q:** And you understood your approval of Linda Mellen's FMLA leave request to entitle her to intermittent family medical leave, is that correct?

**A:** Yes.

**Q:** And prior to sending – strike that. At some point, whether prior to this letter or soon after, you received satisfactory evidence from her that she qualified for medical leave – family medical leave?

**Q:** Yes.

your employment at SPH." *See* Tab 11 to defendants' Exhibits, p. 3. Drolette's letter of
reprimand represented the first time in Mellen's 26+ year BU career that her performance
had formally been called into question, and – notably – the letter was delivered when she
was caring for her mother under the auspices of Federal and state law.

**18. Defendants' Assertion**: "Instead of returning on November 19 as required
by her FMLA approval letter . . ." *See* p. 9 of defendants' Statement of Undisputed
Material Facts.

**Contrary/Supplemental Record Facts**: BU's letter of July 31, 2003, did state
that Mellen's family leave ran through November 18, 2003. As observed *infra* at
Contrary Record Facts Nos. 1-7, however, defendants miscalculated the duration of
Mellen's family leave, misinformed Mellen as to the end-date for her family leave, and
failed to take into account Mellen's family leave rights under the SNLA. Under these
circumstances, BU's statement of Mellen's return date is not controlling.

**19. Defendants' Assertion**: Mellen's letter of November 19, 2003 addressed her
concern about the safety of returning to her job, and stated that Drolette's letter of
October 24th threatened her continuing employment. *See* p. 9 of Defendants' Statement
of Undisputed Material Facts.

**Contrary/Supplemental Record Facts**: First, defendants take the position that
they received Mellen's letter *after* defendants terminated Mellen. *See* p. 9 of Defendants'
Statement of Undisputed Material Facts. If this is true, defendants did not consider the
letter before terminating Mellen.

Second, Mellen's letter was first presented to defendants as an attachment to a

letter from Mellen's counsel on November 20, 2003. *See* Tab 28 to defendants' Exhibits.

Counsel's letter stated, in relevant part, "I encourage you not to misunderstand my

client's intentions[;] Ms. Mellen is willing and able to return to work, and to continue her

work with her usual competence and professionalism, but not under circumstances that

involve her supervisor's harassment and illegal retaliation."

Respectfully submitted,
**Linda Mellen,** by her attorney,

Harry C. Beach BBO#547893
**Law Offices of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
Office: 781.769.6900
Cell: 617.968.4531
**AttyBeach@aol.com**

**October 14, 2005**

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that a true copy of the above
document was served upon the attorney of
record for each other party by mail (by hand)
on          Oct. 14, 2005
Signed:

17