FILED
CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

2005 OCT 14  P 3: 33

**No. 04-10644-MEL**

U.S. DISTRICT COURT
DISTRICT OF MASS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**LINDA MELLEN,**
  **Plaintiff,**

**v.**

**TRUSTEES OF BOSTON**
**UNIVERSITY and FRANCES**
**A. DROLETTE,**
  **Defendants.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   The plaintiff Linda Mellen respectfully submits this Memorandum in

Opposition to defendants' Motion for Summary Judgment.

## I. Employers Do Not Have a Special Entitlement to Summary Judgment in FMLA/SNLA Cases

   Defendants seem to contend, *see* p. 4, defendants' supporting memorandum,

that as FMLA "employers," they are due summary judgment simply upon their request.

The statute, however, is remedial in nature for the benefit of *employees*, and is construed

broadly to effect its purposes. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151,

164 (1st Cir. 1998). In any case, this line of argument does not help defendants' cause or

the Court's review, for at least three reasons.

   First, under Fed.R.Civ.P., 56, the amenability of a dispute to summary judgment

is necessarily fact-intensive, with the courts employing an express bias in favor of the

non-moving party. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 42 (1st Cir. 1999). This bias is especially relevant where – as here – the controlling law spotlights defendants' intentions in firing Mellen.[1] *See Hodgens v. General Dynamics Corp., supra* at 167 (courts should be "particularly cautious" granting employers' motions for summary judgment in light of the intent-focused *McDonnell Douglas* analysis). *See also Rossy v. Roche Prods.,* 880 F.2d 621, 626 (1st Cir. 1989)(employer's explanations "must be decided after trial, especially in cases such as this where [the employer's] intent is the central issue"); *Gallo v. Prudential,* 22 F.3d 1219, 1224 (2nd Cir. 1994)(court must be "exceedingly cautious" about granting summary judgment when intent is at issue).[2] Therefore, defendants' selective case citations are not helpful.

Second, given the fact-intensiveness of the summary judgment inquiry, any effort to extrapolate from a few cases a national judicial preference for FMLA employers or, for that matter, employees, is misleading. A similarly misleading example would be the conclusion drawn from 3 redheads in a group of 5 students that 60% of Americans have red hair.

Third, for every case in which an employer is granted summary judgment, there are examples where either the employer loses at the summary judgment stage, *see e.g.*

---

[1] Defendants shade the facts in asserting that Mellen was not fired, she resigned. In any case, the argument is unavailing. *See Jennings v. Mid-American Energy,* 282 F.Supp.2d 954, 962 (S.D.Iowa 2003)("[a] forced resignation is certainly an adverse employment action akin to termination"). *Accord Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir. 1994)(bar against employer's retaliation extends to adverse actions other than termination).

[2] *Accord Davenport v. Riverview Gardens Sch. District,* 30 F.3d 940, 945 n. 8 (8th Cir. 1994)("[t]he standard for plaintiff to survive summary judgment required only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions").

2

*Cousin v. Sofono, Inc.*, 2003 WL 22391233 (D.Mass. 2003)(Ponsor, J.)(denying employer's summary judgment motion in FMLA dispute); *Lukacinksy v. Panasonic Service Co.*, 2004 WL 2915347 (D.Mass. 2004)(Saylor, J.)(same); *Hodgens v. General Dynamics, supra at* 167-168 (collecting cases where employer's motion for summary judgment was denied); or the employee wins. *See Wheeler v. Pioneer Developmental Services, Inc.*, 349 F.Supp.2d 158, 164 (D.Mass. 2004)(Ponsor, J.)(summary judgment awarded to FMLA plaintiff); *Taylor v. Invacare Corp.*, 64 Fed.Appx. 516 (6th Cir. 2003)(same); *Carpenter v. Refrigeration Sales,* 49 F.Supp.2d 1028 (N.D.Ohio 1999)(same); *Sharpe v. MCI,* 19 F.Supp.2d 483 (E.D.N.C. 1998)(same).

For these reasons, the Court's review is appropriately drawn by the parties to the record facts at hand, not to the status of the party seeking judgment under Rule 56.

## II.   Mellen Was On Intermittent Family Leave, and Can Be Charged Only With the Amount of Family Leave She Actually Took

The loose thread that, once pulled, unravels defendants' argument for summary judgment is the undisputed fact that Mellen requested - and defendants approved – her taking the maximum amount of *intermittent* family leave. *See* plaintiff's Statement of Material Facts in Support of Summary Judgment ("Statement of Material Facts"), Nos. 63-68 (defendants approved Mellen's request for the maximum amount of family leave, to be taken on an *intermittent* basis).[3]  Intermittent family leave is family leave taken in

---

[3]     The deposition exchange between plaintiff's counsel and BU's Director of Personnel, George Snowdon, *see* Tab 3 to plaintiff's Exhibits, Snowdon deposition, pp. 68-69, could not be more clear:

> **Q:** You approved, or your office approved, in 2003, intermittent FMLA leave for Linda Mellen; isn't that correct?
> **A:** Yes.

3

separate periods for a single qualifying reason, *see* 29 CFR 825.800; it may be taken in order for an employee to care for family members, *see* 29 CFR 825.203(c); there is no limit on the size of the increment of leave, *see* 29 CFR 825.203(d); and, most critically here, an employee on intermittent leave may be charged "only the amount of leave actually taken." *See* 29 CFR 825.205(a). *Accord Higginbotham v. Ohio Dept. of Mental Health*, 2005 WL 2319856, *4 ((S.D.Ohio 2005)(using "intermittent" and "day-by-day" interchangeably). *Accord* M.G.L. ch. 149, s. 52D(c)(SNLA leave may also be taken on an intermittent basis).

    Defendants' critical error was their ignoring the intermittent nature of Mellen's family leave. Instead, defendants measured only its gross duration. That is, starting on August 4, 2003, defendants counted 12 weeks of FMLA leave, added 15 working days to accommodate Mellen's previously approved October 2003 vacation, and came up with a miscalculated return-to-work date of November 19, 2003.[4] Defendants thereby exceeded their authority to charge Mellen "only the amount of [FMLA/SNLA] leave actually taken," 29 CFR 825.205(a). The intermittency of Mellen's family leave, in fact and in

---

**Q:** And again, referring to Exhibit 6 [Tab 10 to plaintiff's exhibits in support of her Motion for Summary Judgment], your letter of July 31. Page three, you checked the line next to the sentence[,] provided that you received proper medical verification, etc., etc; do you see that sir?
**A:** Yes.
**Q:** And you understood your approval of Linda Mellen's FMLA leave request to entitle her to intermittent family medical leave, is that correct?
**A:** Yes.
**Q:** And prior to sending – strike that. At some point, whether prior to this letter or soon after, you received satisfactory evidence from her that she qualified for medical leave – family medical leave?
**Q:** Yes.

[4]    Defendants appear not to dispute that they failed to consider and add the 3 days of family leave that the SNLA afforded Mellen.

4

law, exempted not only Mellen's October 2003 vacation – as defendants tacitly accept -
but also the University holidays she had the right - independent of the FMLA/SNLA - to
enjoy. Phrased differently, defendants had no authority to compel Mellen to expend any
one or more of her 63 days of FMLA/SNLA leave on days the FMLA/SNLA did not
compel her to take.[5]

The intermittency of Mellen's family leave is more than a regulatory
technicality. Its significance is particularly heightened where, as here, the employee is
caring for an ill family member, and is not ill or disabled herself. In the latter case, the
nature of the illness or the disability will usually determine the duration of the
employee's absence. In contrast, when family leave is predicated upon the health of the
employee's family member, "[a]nticipated medical leave can potentially be scheduled to
coincide with work holidays or other periods of time which would not have to be counted
as time away from work, thus reducing the amount of FMLA leave the employee is
required to expend." *Donnellan v. New York Transit Authority*, 1999 WL 527901, *4 n.
10 (S.D.N.Y. 1999). *Accord Hill v. Underwood Memorial Hospital*, 2005 U.S.Dist.

---

[5]     Defendants' leave practices were so *ad hoc* that a discriminatory animus could
readily have gained entry. For example, although defendants kept the "FMLA/SNLA
clock" running during the three University holidays that fell during Mellen's family
leave, they tolled it for 15 days during her October 2003 vacation. Along the same lines,
although defendants kept the "FMLA/SNLA clock" running through the University
holidays, its companion "Vacation Leave clock" was stilled for a day when the Columbus
Day holiday fell during Mellen's October 2003 vacation, thereby extending Mellen's
vacation leave.

Similarly, defendants concede that they did not afford Mellen sick leave,
vacation leave, the University's 3-day grace period, unpaid time off, or any other leave of
absence to excuse her absence on November 19, 2003, either because employees on
family leave are not permitted such benefits; because Mellen did not ask; and/or for
reasons defendants cannot explain. *See* plaintiff's Statement of Material Facts, Nos.136-
154.

LEXIS 6659, *22 n. 17 (D.N.J. 2005)(employee caring for an ill family member "has some flexibility with regard to when she takes FMLA leave . . . and may be able to arrange her schedule . . . or put off taking leave or stagger her leave").

Defendants' failure to respect the intermittent nature of Mellen's family leave (and, independently, their failure to take into account Mellen's 3-day SNLA leave) actually prejudiced Mellen. She was subjected to a mistaken and premature return-to-work date, and when she did not return, she was wrongfully terminated.[6] Presumably, had Mellen's rights been respected, and had defendant Drolette not been so eager to terminate her, Mellen would have reported to work on December 8, 2003, *see* plaintiff's Statement of Material Facts, p. 13n.7, having successfully arranged a schedule of alternative care for her ailing mother. *See Donnellan v. New York Transit Authority, supra* at *4 (where employer failed to give accurate notice of employee's family leave, employee is denied the opportunity to arrange with others to provide care to the ill family member; coordinate her leave with work holidays or other non-working days to reduce the amount of her family leave; both of which may cause employee to mismanage "potential future leave by causing her to unwittingly use more time than is necessary for the present leave"). As it was, defendants fired Mellen more than 2 weeks before she was due to return to work and, in any case, well before her FMLA/SNLA leave expired.

---

[6]    Setting aside the record evidence of their retaliatory animus and indifference to the SNLA, *see* discussion *infra* at pp. 10*ff*, defendants purport to excuse their miscalculation as an innocent error. *See* defendants' supporting memorandum, p. 7n. 4. Defendants, however, fail to reference any First Circuit jurisprudence consistent with the Sixth Circuit's study of FMLA violations. In any case, defendants fail to address, let alone distinguish, the First Circuit position that an employer's intent is irrelevant to a prescriptive FMLA violation. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)

### III.    Mellen Did What She Was Required To Do

Defendants chide Mellen for not providing them the notice they *now* claim was *then* due. *See e.g.* defendants' Statement of Material Facts, p. 2 (Mellen "never contacted anyone at the University to ask for additional leave [beyond November 18, 2003]"; p. 4 (Mellen "did not contact anyone at the University to discuss the issue [of Drolette's October 29, 2003 letter] or to request additional leave"); and *see* defendants' Memorandum, p. 15 ("Mellen did not ask for leave under the SNLA"). This argument misreads FMLA/SNLA law.

"An employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice." 29 CFR 825.303(b)(employee needs to state only that leave is needed); 29 CFR 302(c)("[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA"); *Spangler v. FHLB of Des Moines*, 278 F.3d 847, 852 (8th Cir. 2002)(employee does not need to invoke the FMLA by name to put employer on sufficient notice); *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 935 (6th Cir. 2000)(same); *Greenwald v. Tambrands, Inc.*, 366 F.Supp.2d 195, 205n. 9 (D.Me. 2005)("an employer with some prior knowledge of an employee's medical situation may not rely on an unspecified request for FMLA leave to avoid the duty to inquire into whether the request is FMLA-qualifying")(citation omitted). An employee only has to provide her employer sufficient information to put the employer on notice that she may need family leave. *See Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000); *Arban v. West Publishing Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Any kind of notice complies with the regulatory requirements. *See* 29 CFR 825.303. In fact, "an employee does not

7

even have to know about her rights under the FMLA." *Wheeler v. Pioneer Developmental, supra* at 166, citing *Scoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). *Accord* Massachusetts Attorney General Advisory 98/1, p. 3 ("[e]mployees need not make reference to the [SNLA] in order to assert their rights under the law"); 940 CMR 20.01, 20.02 (employees need to only give notice of circumstances that inform employers of the need for SNLA leave).

If defendants believed in 2003 what they now contend, that Mellen had not given them sufficient notice of her need for the maximum amount of FMLA/SNLA leave, their statutory option was clear: they were compelled to "inquire further of the employee . . . to ascertain whether the paid leave is potentially FMLA-qualifying." *Plant v. Morton Intern., Inc.*, 212 F.3d 929, 935 (6th Cir. 2000)(referencing 29 CFR s. 825.208(a)). *See George v. Associated Stationers*, 932 F.Supp. 1012, 1016 (N.D.Ohio 1996); *Manns v. ArvinMeritor, Inc.*, 291 F.Supp.2d 655, 659-660 (W.D.Ohio 2003)(employer had duty to determine whether the leave requested fell under the FMLA, and the duty to obtain information necessary to confirm that the leave complies with those statutes). *Accord Tambush v. St. Bonaventure University*, 2004 U.S.Dist.LEXIS 19914, *32-*36 (W.D.N.Y. 2004)(FMLA was sufficiently implicated by employee's telling University of his treatment for anxiety and depression, and University's knowledge that employee had previously taken time off due to emotional distress). *See generally Wheeler v. Pioneer Developmental, supra* at 166-167, 169-170 (outlining the process and employer's obligations under Federal law when employer believes employee's submission regarding her need for family leave is inadequate or dubious).

8

**IV.     Mellen *Was* Able To Return To Work**

      Defendants appropriately concede, defendants' supporting memorandum, p. 11,

that "an employee need not show up on the employer's doorstep in order to qualify as

returning from FMLA leave," quoting *Barry v. Wing Mem. Hosp.*, 142 F.Supp.2d 161,

165 (D.Mass. 2001), as long as she was able to return to work.  Nevertheless, defendants

stretch the record facts to conclude that Mellen was "unable to return from leave" on her

return-to-work date.  *See* defendants' supporting memorandum, pp. 11-12.  Defendants'

authorities, however, involve employees who had taken family leave to attend to *their*

*own* serious medical conditions.  *See e.g. Roberson v. Cendent Travel Services, supra*

(employee was disabled by epilepsy and narcolepsy at the end of her family leave, and

could not have returned to work).[7]  In contrast, Mellen's family leave was dedicated to

her mother's health, not her own.[8]  Consequently, Mellen had the continuing physical

ability throughout her family leave to return to work when she was rightly due.  In any

_____

[7]     *See also Barry v. Wing Mem. Hosp., supra* at 165-166 (undisputed evidence
established that employee was "completely disabled" on her return-to-work date);
*Holmes v. e.spire Communications*, 135 F.Supp.2d 657 (D.Md. 2001)(employee admitted
that as a result of her difficult pregnancy, she was unable to return to work on her return-
to-work date); *Cormier v. Littlefield*, 112 F.Supp.196, 198 (D.Mass. 2000)(employee's
reconstructive knee surgery make it impossible to perform his duties as utility company
lineman at the time his leave expired); *Donnellan v. New York City Transmit, supra*
(employee remained physically unable to perform job at conclusion of her family leave).

[8]     As previously addressed, *see* plaintiff's Statement of Material Facts, Nos. 63-69,
Mellen's family leave required her to return to work no earlier than November 26, 2003.
*But see id.* at n. 7 (the combination of University holidays and vacation time previously
approved extended Mellen's actual return-to-work date to December 8, 2003).
Notwithstanding the parties' dispute on this issue, Mellen was always physically capable
of returning to work whenever she was due given that the distance between Sagamore
Beach, Massachusetts (where Mellen owned a house) and Boston University is
approximately 55 miles, and can be reached in approximately one hour; and the distance
between Albany, New York (where Mellen's mother had a house) and the University is
approximately 170 miles, and can be traveled in approximately three hours by car. *See*
Fed.R.Evid., R. 201 (court may take judicial notice of indisputable facts).

case, if there is a question concerning Mellen's capacity to return to work upon the

expiration of her family leave, summary judgment for defendants is not appropriate. *See*

*Viereck v. City of Gloucester City,* 961 F.Supp. 703, 709 (D.N.J. 1997), cited and

discussed in *Roberson v. Cendant Travel Services, supra* at 579 (employee could have

rescheduled doctors' appointments to return to work if her return-to-work date was clear).

## V.     Mellen Has Produced Sufficient Evidence of Defendants' Discriminatory Intent to Warrant Trial

If Mellen was privileged to be absent November 19, 2003, she establishes

violations under both the prescriptive and proscriptive theories of FMLA/SNLA recovery

(regarding the latter, *see Jennings v. Mid-American Energy Co., supra* at 961 (if an

employer had no reason for terminating an employee other than her use of family leave,

the specific act of refusing to restore the employee to her position following family leave

is unlawful and actionable). If Mellen was not so privileged, Mellen can still prevail by

producing sufficient evidence that her absence on November 19th represented a pretextual

basis for defendants' anti-family leave animus. *See Hunt v. Rapides Healthcare System*

*LLC,* 277 F.3d 757, 768-769 (5th Cir. 2001)(retaliation claim remains viable without a

violation of substantive FMLA provisions, and does so both during and after the family

leave period). *Accord Gordon v. Gerard Treatment Programs,* 2005 U.S.Dist.LEXIS

22279, *45 (N.D.Iowa, 10/03/05)(fact that employer had right to do something, *i.e.,*

terminate employee for not submitting a FMLA return-to-work certification – "does not

necessarily insulate [employer] from liability for *doing* that something, where other evidence suggests pretext and retaliation")(emphasis in original)(copy attached hereto).[9]

Defendants erroneously claim that "[t]here is no evidence . . . that Defendants retaliated against Plaintiff because she took FMLA leave." *See* defendants' supporting memorandum, p. 2. The record evidence contradicts this claim at every turn. [10]

As detailed with record citations in plaintiff's Statement of Material Facts, Nos. 25*ff*, Mellen's family leave provoked from defendants a hostile and ultimately retaliatory

---

[9]    This observation by the District Court in *Gordon* underlines the fact that even if the termination of Mellen was an option available to defendants, defendants were not compelled to elect that option over any other (including a warning, a suspension, the granting of other available leave, or a simple inquiry into why Mellen was absent). Defendants, though, chose the harshest option available, which renders them vulnerable to Mellen's retaliation claim.

[10]    Given that defendants take the position that they had only one reason for terminating Mellen, and given that defendants' reason directly and unapologetically implicates the FMLA/SNLA, neither the *McDonnell Douglas* analysis nor the mixed motive analysis appears necessary. Therefore, the uncertain interplay in this Circuit between the *McDonnell Douglas* pretext analysis and the mixed motive analysis of *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), appears unnecessary to address. *See and compare e.g., Patrick v. Jansson Corp.*, 2005 U.S.Dist.LEXIS 11264, *10 (D.Mass. 2005)(Stearns, D.J.)(a plaintiff in a pregnancy discrimination case need not produce direct evidence of discrimination, but only evidence that a discriminatory animus was a motivating factor, citing *Desert Palace*); with *Iwata v. Intel Corp.*, 349 F.Supp.2d 135, 144 n. 2 (D.Mass. 2004)(Young, D.J.)(questioning whether *Desert Palace* applies beyond Title VII discrimination claims); and *McKenzie v. Potter*, 2004 U.S.Dis.LEXIS 17356, *12 (D.Mass. 2004)(Woodlock, D.J.)("it is unclear [after *Desert Palace*] whether pretext [*McDonnell Douglas*] or mixed motive analysis should apply in a given case, or whether pretext analysis has even survived the decision"). *Cf. Hillstrom v. Best Western*, 354 F.3d 27, 31 n. 3 (1st Cir. 2003)(hinting that *McDonnell Douglas* remains a viable mode of analysis).

Of course, if the Court believes that the parties should address the *McDonnell Douglas/Desert Palace* issue, Mellen is prepared to do so by means of a supplemental memorandum.

response.[11] Beginning with Mellen's taking time off to be with her mother (March 2003) and culminating with defendants' termination of Mellen in November 2003, defendants discriminated and retaliated against Mellen in a variety of ways, including:

- Their denying Mellen her long-time "Fridays at home" schedule;
- Their new and critical scrutiny of Mellen's work performance and attendance (the first such criticism of Mellen in her 26 years at the University);[12]
- Their proposal two weeks into Mellen's family leave to progressively discipline Mellen or to eliminate her position;
- Their formal reprimand of Mellen during her family leave, which included their criticism of Mellen for her "lack of professionalism [and] responsibility]", *see* Tab 14 to plaintiff's Exhibits, despite that Drolette now admits that Mellen's scheduling of her family leave was "responsible and professional," *see* Drolette deposition, at p. 187;
- Their assignment of work to Mellen during her family leave, and their negative consideration of her not performing that work when evaluating their options regarding her employment;
- Their extraordinary engagement of the Dean of SPH (Meenan) in the decision to fire Mellen, which represented the Dean's first involvement ever in a non-faculty termination;
- Their engagement of the University President in the decision to fire Mellen;
- Their *ad hoc* application of the University's leave benefits;
- Their denying Mellen the benefit of the University's November 17th holiday;

---

11      Snowdon acknowledged that Drolette was unhappy with Mellen's taking family leave. *See* plaintiff's Statement of Material Facts, No. 56. On her part, Drolette conceded that she did not regard family leave as a key benefit. *Id.* at No. 163.

12      It is difficult to understand defendants' attention to Mellen's work performance in their supporting memorandum, p. 13, given their unapologetic claim that they had the right to terminate Mellen because she missed a single day of work. Defendants' attention to Mellen's work performance may be read, in fact, as undermining their claim that they had the right to terminate Mellen.

- Their denying Mellen a variety of University leave benefits regarding her absence on November 19th either because she had been on family leave or for reasons they could not explain;

- Their failure to afford Mellen the 3-day grace period provided by the University's personnel rules;

- Their failure to consider or afford Mellen 3 additional days of family leave under the SNLA, their reckless indifference to the SNLA requirements, and their low regard for the University's family leave benefit;

- Their miscalculation of Mellen's family leave, and associated failure to respect its intermittent nature;

- Their termination of Mellen for not reporting to work on November 19th, and their subsequent finger-pointing as to who among them was responsible for the termination;

- Their (Drolette's) highly unusual personal involvement in the act of terminating Mellen, including her typing of the termination letter, and her rushing it herself to the post office, in the dark, to ensure it got in the mail;

- Their underpayment to Mellen of the cash value of her accrued vacation leave;

- Their rooting around, post-termination, for additional reasons to terminate Mellen;

- Their acknowledgement that no employee similarly situated to Mellen (*i.e.*, more than 10 years at BU, without any job deficiency or attendance issues) had ever been terminated for missing one day of work;

- Their (Drolette's) acknowledgement that Mellen was the only employee she ever involuntarily "resigned"; and

- Their (Drolette's) acknowledgement that Mellen was the only employee she knew who was held to have "resigned" because she had not appeared for work on the first day she was expected to return after leave. [13]

---

[13]    While defendants' termination of Mellen was the crowning event in terms of defendants' retaliation, and was the "adverse action" for purposes of defendants' proscriptive violation, the discrimination and the harm visited upon Mellen both before

These record facts, especially when viewed against the backdrop of Mellen's exemplary 26 year work and attendance career at BU, constitute abundant direct and circumstantial evidence of defendants' illegal conduct. That is, defendants' termination of Mellen for missing a single day of work was not a legitimate and reasonable personnel decision – it was, (a) singularly unfair and harshly disproportionate to the situation, (b) highly unusual in the experience of those responsible for the termination, and (c) a retaliatory strike motivated by defendants' anger and frustration at her absence. *See generally Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148, 120 S.Ct. 2097 (2000)(a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated). *Accord Chandler v. Specialty Tires*, 283 F.3d 818, 826 (6th Cir. 2002)(in addition to suspicious timing, the jury had sufficient evidence to find for employee, in the form of doubts about the credibility of employer's proffered reason for termination, the demeanor of witnesses at trial, and the employee's prior excellent work habits); *Strate v. Midwest Bankcenter, Inc.*, 398 F.3d 1011, 1020-21 (8th Cir. 2005)(employee satisfied her burden regarding pretext with evidence of close temporal proximity, strong employment history, and her objective qualifications for a new position for which she was told that she was a non-viable candidate); *Scheidecker v. Arvig Enterprises, Inc.,* 122 F.Supp.2d 1031, 1042-1043 (D.Minn. 2000)(fact that employee consistently received positive performance reviews and that in her lengthy tenure she had not received any written discipline or warning prior to her taking family

and after her termination shows with unusual clarity that the termination was tainted with illegal animus.

14

leave provides evidence relevant to the employer's discriminatory intent); *Longstreth v. Copple,* 1999 WL 33326724 (N.D.Iowa 1999)(employee established disputed issue of fact regarding pretext from combination of close temporal proximity, supervisor's comments to plaintiff upon her termination, and allegations in plaintiff's affidavit); *Gordon v. Gerard Treatment Programs, supra* (employee produced "more than adequate evidence" of pretext in nature of employer's inconsistent rationales for its job action, temporal proximity, and employer's decision to terminate employee rather than to delay her return to work); *Halverson-Collins v. Community & Family Resources,* 2005 U.S.Dist.LEXIS 6341 (N.D.Iowa 2005)(employer's motion for summary judgment denied upon evidence that employer's negative treatment of employee began immediately after employee's initial - though non-FMLA - leave; employer's criticism of employee because employee allegedly communicated poorly with her supervisor about her family leave; and credibility questions regarding employer's knowledge and reasons for termination).[14]

    To state the obvious, an employer's discriminatory intentions may be revealed by its statements and conduct. *See Rathbun v. Autozone, Inc.,* 361 F.3d 62, 72 (1st Cir. 2004)("many veins of circumstantial evidence may be mined" regarding the issue of pretext, including " – but are by no means limited to," evidence of discriminatory comments, evidence of differential treatment, and comparative evidence). For example,

---

[14]    As to *Halverson-Collins, see* Plaintiff's Statement of Material Facts, Nos. 34-36, and 37*ff.* (Mellen took non-FMLA leave in March 2003 to be with her mother, which defendants knew, immediately following which defendants began their criticism of Mellen's performance, attendance, and willingness to work as a team player), and Nos. 90-92 (defendants criticized and formally reprimanded Mellen during her family leave because of her allegedly poor communication regarding her leave).

an employer's complaining about an employee being "out of the office so much"

provided evidence relevant to employer's discriminatory intent. *See Sharpe v. MCI*

*Telecommunications Corp.*, 19 F.Supp.2d 483, 486, 490 (E.D.N.C. 1998). *See also*

*Lukacinsky v. Panasonic Service Co., supra* at *5 (employer's derogatory or critical

comments regarding employee's absences present strong evidence of discriminatory

motive); *Gordon v. Gerard Treatment Programs, supra* at *49-50 (employer's pre-

termination communications criticizing employee for "continuing to push the envelope"

regarding her family leave, for "challenging" employer's calculation of family leave, and

for her "becoming a problem" because of her questions regarding the duration of her

family leave, were evidence that employer was becoming hostile to employee's family

leave rights). *Compare* plaintiff's Statement of Material Facts, Nos. 37-62 (*e.g.,* Drolette

was clearly not happy with Mellen's family-related absences; Drolette complained that

"it was challenging to plan and manage [her] office objectives" given Mellen's "sporadic

absences;" Drolette complained that Mellen was "disconnect[ed]" from her "professional

responsibility"; and Drolette openly questioned "how will [Mellen's] responsibilities get

covered?").[15]

Similarly, a college dean's asking whether he could "not renew" an employee

after the employee requested family leave is probative of the employer's discriminatory

intent. *See Hillman v. Hamilton College*, 1998 WL 166827, *20-21 (N.D.N.Y. 1998).

*Compare* plaintiff's Statement of Material Facts, Nos. 81-82 (defendant Drolette, just two

---

[15]     As the District Court in *Gordon, supra,* observed, "[i]t is a very small step from
inferences of such hostility on the part of decision makers to a conclusion that the
decision makers acted upon that hostility in taking the adverse employment action." *Id,*
at *49-50.

weeks into Mellen's family leave, met with BU's Director of Personnel and proposed to terminate Mellen, eliminate her position, and/or to negotiate a severance/resignation agreement with her).

"Doubts about the fairness" of an employer's decision or the employer's "misjudging" of relevant facts "may be probative of whether the employer's reasons are pretexts for discrimination." *See Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 531 (3rd Cir. 1992), quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089 (1981). The issue of fairness is particularly relevant here, where defendants fired a veteran employee with an unblemished performance and attendance record simply because – according to defendants – she missed a single day of work. The unfairness to Mellen is compounded by the undisputed fact that her absence on November 19, 2003 – whether authorized or not – did not cause defendants any injury or prejudice. *See* plaintiff's Statement of Material Facts, No. 97. *Compare Manns v. ArvinMeritor, Inc.,* 291 F.Supp.2d 655, 662 and n. 7 (N.D.Ohio 2003)(substantial undisputed evidence that plaintiff's fellow employees complained about plaintiff's absences and confronted management, that management was compelled to hire substitute employee at $60,000/year, and that employer's customers complained). The unfairness is further aggravated by the fact that according to defendants, Mellen was the first employee ever terminated for not appearing for work on her first return-to-work date. *See* plaintiff's Statement of Material Facts, Nos. 119-120, 122-124.

In sum, the record evidence supports the conclusion that defendants' proffered reasons for their termination of Mellen were false and not made in good faith. Therefore, the Court – respectfully - should infer from such proof "that . . . discriminatory animus

was the determinative cause of the adverse employment decision." *Lipchitz v. Raytheon*, 434 Mass. 493, 507 (2001). *Accord Dragonas v. School Committee of Melrose*, 64 App.Ct. 429, 444-445 (2005)(in addition to disputing facts underlying performance appraisal, employee raised triable issues regarding whether evaluation reflected employer's good faith judgment, thereby masking a discriminatory animus).

## VI.   Defendants' Non-Disclosure of Circumstantial Evidence of Retaliation/Comparative Evidence

One last note for purposes of this opposition should be made, regarding defendants' failure to date to produce certain documents reflecting comparative evidence relevant to Mellen's claims. Specifically, Mellen has requested documents regarding adverse actions taken against University employees on account of their failure to appear for work on their return-to-work date, when such employees were on leave, but *not* on family leave, immediately prior to the adverse action.[16] This sort of circumstantial evidence is probative of intentional discrimination. *See Rathbun v. Autozone, Inc., supra* at 72 (comparative evidence is one of the "veins of circumstantial evidence [that] may be mined" on the issue of pretext); *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 738 (7th Cir. 1994)(discrimination claim may be established circumstantially, including employee's submission of evidence that employees similarly situated except for the legally protected characteristic were afforded better treatment); *Manzer v. Diamond Shamrock Chem.,* 29 F.3d 1078, 1084 (6th Cir. 1994)(same).

---

[16]     Plaintiff's Motion to Compel the production of these documents, with defendants' opposition, is pending with the Court and is slated to be heard October 17, 2005.

Simply put, Mellen has a reasonable basis for believing that but for her family leave she would not have been fired for missing one day of work. *See Troupe v. May Dept. Stores Co., supra* at 739 (plaintiff who was fired on eve of maternity leave "would be halfway home if she could find one non-pregnant employee of [defendant/employer] who had *not* been fired when about to begin a leave similar in length to hers")(emphasis in original). Defendants' non-disclosure of documents responsive to plaintiff's request denies to plaintiff additional evidence of defendants' violation of FMLA/SNLA.

**VII.    Conclusion**

For these reasons, the plaintiff Mellen respectfully opposes defendants' motion for summary judgment.

Respectfully submitted,
**Linda Mellen,** by her attorney,

Harry C. Beach BBO#547893
**Law Offices of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
Office: 781.255.5573
Cell: 617.968.4531
**AttyBeach@aol.com**

**October 14, 2005**

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand)
on_____Oct. 14, 2005_____
Signed:_____

19