UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04-10644-MEL



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
LINDA MELLEN,
    Plaintiff,

v.

TRUSTEES OF BOSTON
UNIVERSITY and FRANCES
A. DROLETTE,
    Defendants.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENA TO NON-PARTY, WITH CROSS-MOTION FOR SANCTIONS; ALTERNATIVELY, PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY REGARDING DEFENDANT UNIVERSITY'S *PIVACEK/LEAVY* LITIGATION**

I. INTRODUCTION

Defendants face trial in December 2006 because of their retaliatory discharge of a long-term (26+ years) employee, Linda Mellen. Mellen's discharge was predicated upon her assertion of rights under the Family and Medical Leave Act ("FMLA") and the Massachusetts Small Necessities Leave Act ("SNLA").

Piqued, perhaps, that its non-disclosure of *Pivacek/Leavy* documents has been found out, defendant Boston University now seeks to block a third party's disclosure of the documents.[1] The documents at issue, however, should have been disclosed – or, at minimum, identified - by the University in 2004, because they were responsive to plaintiff's October 2004 request for documents and relate to, (a) the University's FMLA and other employee leave policies, and (b) the credibility of University employees

---

[1] As set out in the subpoena, plaintiff seeks only the production of the documents, and does not intend to depose the record keeper.

involved in firing Mellen. The University's effort to keep the documents concealed suggests bad faith, and at least evidences an unseemly attitude of gamesmanship regarding discovery matters. Accordingly, plaintiff requests that the Court enter sanctions against the defendants pursuant to Fed.R.Civ.P., R. 37(a)(4)(B) and R. 26(c).

Should the Court, notwithstanding the University's non-disclosure of relevant documents and its misleading Opposition, determine that the discovery deadline prevents the enforcement of Mellen's subpoena *duces tecum* to the Law Offices of Wendy A. Kaplan, Mellen alternatively requests, upon the grounds set out below, that the discovery period be re-opened for purposes of enforcing said subpoena.[2]

## II. FACTUAL BACKGROUND: THE UNIVERSITY'S BAD FAITH CONCEALMENT OF THE *PIVACEK/LEAVY* DOCUMENTS DESPITE PLAINTIFF'S TIMELY REQUESTS

### A. The *Pivacek/Leavy* Litigation

The subpoena at issue is specifically focused on documents related to a May 2002 lawsuit against Boston University, *Linda Pivacek and Marilyn Leavy v. Trustees of Boston University and C. Robert Valeri*, Suffolk County (Mass.) Superior Court, C.A.No. 02-2294 ("*Pivacek/Leavy*"). The plaintiffs, two Medical Campus employees, alleged harassment and retaliation by their supervisor and others at the University's Medical Campus, including the Medical School's Director of Personnel, Michael Donovan, and its Dean (now University President), Dr. Aram Chobanian.[3]

---

[2] Notably, the subpoenaed third-party, the Keeper of Records of the Law Office of Wendy A. Kaplan, has *not* objected to producing the identified records. Therefore, defendants' stated concern for "the unwanted burden thrust upon [Attorney Kaplan's office], *see* defendants' memorandum, at p. 5, is not credible.

[3] Like Pivacek and Leavy, Linda Mellen was a Medical Campus employee and, also like them, charges the University with retaliation. In addition, Dr. Chobanian played

2

Included among the claims of the *Pivacek/Leavy* plaintiffs, *see* Complaint, Tab 1 hereto, are various allegations implicating the University's employee leave policies, including FMLA leave. For example, Pivacek and Leavy alleged (Complaint, para. 66) that,

> [o]n or about March, 2002, BU retaliated against [them] by stating that it was placing them on Family Medical Leave Act leave for twelve weeks, and would terminate their employment at the end of that period.

They also alleged FMLA-qualifying conditions (para. 54):

> In October, 2001, both plaintiffs became so fearful and so distraught that they were unable to continue working[;] [b]oth plaintiffs went on sick leave from BU.

One significant component of the *Pivacek/Leavy* litigation involved Dr. Chobanian's March 7, 2002 letter to the plaintiff Pivacek, in which Chobanian addressed her refusal to return to work since October 10, 2001 (that is, going on 6 months). *See* Tab 2 hereto, Chobanian-Pivacek letter.[4] Chobanian's letter also addressed Pivacek's right under University policy to apply 130 days of sick leave and 50 days of vacation leave against her absences; and her right to FMLA leave in order to further extend her absence. *Id.*

In July 2002 BU answered the *Pivacek/Leavy* complaint. In its answer, *see* Tab 3 hereto, BU admitted that Pivacek and Leavy took sick leave (para. 54); had requested paid administrative leave (para. 55); had not worked from mid-October 2001 to July 2002; and had their absence from the University counted against their accrued sick and vacation leave (para. 56). BU also admitted that it allowed Pivacek and Leavy to use sick

---

a role not only in the University's retaliation against Pivacek/Leavy but, as well, in the decision to terminate Mellen.

[4] Similarly, in the present matter, the University claims that Mellen refused to return to work.

3

and vacation time during their (by then) 9+ month absence (October 2001 – July 2002). *See* University's Answer, para. 64.[5] In May 2003, the University settled the *Pivacek/Leavy* litigation. *See* Tab 4 hereto, Stipulation of Dismissal.

The University was represented in the *Pivacek/Leavy* litigation by two attorneys from the University's Office of General Counsel, including Lawrence Elswit, Esq. *See* Tab 5, Affidavit of Erika Geetter, Esq., para. 3. *See also* Tab 3, University's Answer, p. 12. Notably, Attorney Elswit also serves as one of the University's attorneys of record in the instant matter.

### B. Mellen's Requests for and the University's Concealment of the *Pivacek/Leavy* Matter

#### 1. Mellen's Rule 34 Request and the University's Response

Six months after settling the *Pivacek/Leavy* matter, defendants fired Mellen during her FMLA leave, which she spent caring for her 88-year old mother. Mellen filed suit, and in October 2004 served a Rule 34 request upon the University. Mellen's request called on the University to produce – or at minimum, identify[6] - the *Pivacek/Leavy* files. Specifically, in her First Request for Production of Documents, *see* Tab 6 hereto, Mellen sought:

---

[5]   The University's allowing Pivacek and Leavy to use more than 9 months of accrued sick and vacation leave highlights defendants' anti-FMLA animus, given that the University terminated Mellen – absent on FMLA leave - for missing *one* day of work notwithstanding her 175 days of accrued sick/vacation leave. *See also* note 8 *infra*.

[6]   In her Rule 34 Instructions, *see* Tab 6, p. 1, Mellen requested defendants to identify any documents they intended to withhold on a claim of privilege, work product, or as being outside the scope of Fed.R.Civ. P., R. 34. Despite this, defendants failed to identify the *Pivacek/Leavy* documents in their Rule 34 response, and did not produce a privilege log.

4

- "[D]ocuments relating to the University's personnel/employment policies, practices, and procedures regarding leave under the FMLA and SNLA", *see id.* at Request No. 3;

- "[D]ocuments relating to the University's personnel/employment policies, practices, and procedures regarding employees' returning to work following their extended leave, including but not limited to leave taken pursuant to the FMLA and/or SNLA leave," *see id.* at Request No. 4; and,

- "[A]ll documents relating to or otherwise identifying legal claims or complaints made by University employees against the University for alleged violations of the FMLA and/or SNLA during the period 1995-present." *See id.* at Request No. 9.

In response to these requests, however, the University produced only its Personnel Policy Manual and documents relating to two Federal Court cases, *Sonia J. Szabo v. Trustees of Boston University* (pending 1996-1998), and *John Walsh v. Boston University* (2004). *See e.g.,* Tab 7 hereto.[7] That is, BU failed in December 2004 to produce or even identify its *Pivacek/Leavy* records, although they were responsive to documents requested in Nos. 3, 4 and 9 of Mellen's Rule 34 request.[8]

---

[7] *Szabo* and *Walsh* were not primarily FMLA cases. Still, the University apparently found them to have sufficient FMLA issues running through them to produce them to Mellen. Similarly, *Pivacek/Leavy* is not primarily a FMLA case, but it has significant FMLA and employee leave issues running through it. Given this shared characteristic among *Szabo*, *Walsh*, and *Pivacek/Leavy*, the University's non-disclosure of *Pivacek/Leavy* documents is, (a) inconsistent with its disclosure of *Szabo* and *Walsh* documents, and (b) admits the inference that the *Pivacek/Leavy* documents hold information and admissions prejudicial to the University's defense in the present matter.

[8] The relevance of the *Pivacek/Leavy* litigation to Mellen's situation is stark. On November 19, 2003, when Mellen did not appear for work after a period of FMLA leave, she had more than 50 vacation days and 125 sick leave days accrued to her. The University, however, did not permit her to use such leave and, instead, fired her for missing work on that day. Such shabby treatment of an employee out on FMLA leave, when compared to the indulgences the University permitted Pivacek and Leavy, whose absences were not classified as FMLA leave, is probative of the University's animus against employees on FMLA leave.

### 2. Mellen's Deposition of the University's Snowdon

In mistaken reliance upon the good faith of the University's Rule 34 response and document production, Mellen proceeded to conduct the deposition of the University's Director of Personnel, George T. Snowdon. When asked whether he had ever been deposed, Snowdon acknowledged being deposed once before, in a case he identified as "Marilyn Leavy and Linda Pivacek v. Boston University." See Tab 8 hereto, Deposition of George T. Snowdon, December 16, 2004, pp. 152-153. When asked what the *Pivacek/Leavy* case involved, Snowdon responded, "I don't - - there are too many different matters related to the situation."[9] When asked when he was deposed in that matter, Snowdon answered, "I do not recall the year," yet when pressed stated, "I believe it was since 2000."[10] Snowdon then went on to say that Leavy and Pivacek were BU employees who worked on the Medical Campus, adding that he could not even recall whether he was a party to the lawsuit. *Id.* at pp. 152-153.

Based upon the University's responses to Mellen's Rule 34 requests and upon Snowdon's sworn testimony, Mellen had no factual basis to believe or suspect that the *Pivacek/Leavy* matter involved any issues germane to her own, and no basis to suspect

---

[9] As Mellen learned in mid-2006, Dr. Chobanian copied Snowdon on Chobanian's letter of March 7, 2002 to Pivacek. *See* Tab 2 hereto. This fact indicates that when Mellen deposed him in December 2004, Snowdon had – contrary to his deposition testimony - actual knowledge of "the matters related to the [*Pivacek/Leavy*] situation."

[10] Snowdon was presumably deposed sometime between July 2002, when the University answered the *Pivacek/Leavy* complaint, and May 2003, when the matter was settled. Therefore, Snowdon's testimony in December 2004 that he did not know the year in which he was deposed, and then his offer that it was "since 2000," is not credible.

that defendants were intentionally concealing responsive documents.[11] As it was, the University's concealment of the *Pivacek/Leavy* matter persisted through the discovery deadline of June 24, 2005, and the parties' submission of summary judgment papers in August – October 2005. In fact, it was not until June 2006 that Mellen learned – and then through independent sources – that the *Pivacek/Leavy* lawsuit involved issues germane to the University's FMLA policies and practices, and to other classes of employee leave at the University's Medical Campus. *See* Affidavit of Linda Mellen, attached hereto at Tab 9.[12]

Thereafter, Mellen moved promptly to investigate the *Pivacek/Leavy* claims. *See* Tab 10, Affidavit of Harry C. Beach. The public records available in Suffolk County Superior Court – including the *Pivacek/Leavy* complaint, the University's answer, the Chobanian letter, affidavits from University counsel Erika Geeter, and plaintiffs' filings with the Massachusetts Commission against Discrimination for discrimination and retaliation – compelled the conclusion that the defendant University had wrongfully

---

[11] Contrary to the University's argument, Mellen's discovery obligations are not so extensive that she is bound to review files from every case in which Boston University has been or is a defendant, in every civil clerk's office in the Commonwealth.

[12] Since the close of the discovery deadline, defendants have engaged several strategies in their effort to withhold other documents. For example, after the Court allowed (October 19, 2005) Mellen's first Motion to Compel defendants' production of documents relating to the termination of employees who had not returned to work after their authorized leave periods, defendants unilaterally redacted from those documents critical identifying information. This unauthorized and dubious act forced plaintiff to file a second Motion to Compel, allowed by the Court on July 26, 2006. Subsequently, defendants represented to plaintiff that only one of the three employees selected for identification by plaintiff had agreed to be identified, further thwarting plaintiff's discovery.

concealed documents they should have produced during the discovery period.[13] The public records also suggested that the University's Snowdon had provided misleading testimony at his December 2004 deposition.

After informal efforts to obtain additional documents from counsel for the *Pivacek/Leavy* plaintiffs failed, Mellen on or about August 23, 2006, subpoenaed the Keeper of Records for said counsel, seeking depositions and other records related to the *Pivacek/Leavy* litigation.[14] The University then filed its instant Motion to Quash.

### III. ARGUMENT - The University's Bad Faith Non-Disclosure of *Pivacek/Leavy* Documents

Given the background outlined above, defendants' argument suggests that gamesmanship rather than good faith drives defendants' approach to Federal Court discovery. *Compare U.S. v. Proctor & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 986-7 (1958)(the purpose of Federal Court discovery is to "make a trial less a game of blind man's bluff and more a contest with the basic issues and facts disclosed to the fullest practicable extent"). *See also* footnote 12 *infra*. For example, the University falsely represents that Mellen "never requested documents concerning the *Pivacek/Leavy* Litigation," *see* defendants' Memorandum, p. 4, yet fails to inform the Court that Mellen indeed requested a class of documents that included the *Pivacek/Leavy* documents. *See*

---

[13]    University counsel Elswit, who represented the University in the *Pivacek/Leavy* litigation and who represents the University in the present matter, knew of the *Pivacek/Leavy* documents when the University responded to Mellen's request for documents.

[14]    Despite defendants' chiding footnote regarding notice to the University, *see* defendants' Memorandum, p. 2 and Exhibit 2, Mellen notified defendants of the subpoena to Attorney Kaplan immediately upon learning that it had been served. *See* Tab 10 hereto, Beach Affidavit.

Tab 6 hereto, Mellen's Request for Production of Documents, Requests Nos. 3, 4, and 9. *See* discussion *infra* at pp. 4-5.

Mellen's formal and timely requests should have compelled defendants to produce or, at minimum, identify the *Pivacek/Leavy* documents, given that issues relating to FMLA leave and other classes of employee leave were a part of the *Pivacek/Leavy* litigation. *See also MJS Janitorial v. Kimco*, 2004 WL 2905409, *5-*6 (W.D.Tenn. 2004)(discovery phrased in terms of "relating to" comes within the "broad scope of relevance" recognized by Federal rules"). *See also Security Ins. Co. v. Trustmark*, 218 F.R.D. 24, 28-29 (D.Conn. 2003)(a "relating to" Rule 34 request, when indexed to a specific subject matter, is not overbroad). *Accord Winterwood Farm LLC v. JER Inc.*, 327 F.Supp.2d 34, 39 (D.Me 2004)("relating to" language in arbitration clause "is the paradigm of a broad clause").[15]

Defendants also misleadingly submit that,

> the "*Pivacek/Leavy* Litigation itself has no bearing on the single claim remaining in Plaintiff's case, [which defendants characterize as] whether the University deemed her to have resigned when she did not return from FMLA leave in retaliation for her decision to take FMLA leave.

*See* defendants' Memorandum, p. 4. Defendants again mislead the Court:

- *Pivacek/Leavy*, as does *Mellen*, involves claims of retaliation and the use by employees of various kinds of employee leave, including FMLA leave;
- *Pivacek/Leavy*, as does *Mellen*, provides a statement (Chobanian's, *see* Tab 2 hereto) of the University's purported policy regarding the availability of sick, vacation, and FMLA leave, and the relationship of such leave to the termination of employees for not appearing for work; and,

---

[15] Defendants fail to explain how Mellen could have requested the *Pivacek/Leavy* litigation by name in her October 2004 Rule 34 request; or why Mellen should have requested such documents after Snowdon's deposition, given that Snowdon concealed the nature of, and his involvement in, that litigation.

9

- *Pivacek/Leavy* shows that although the University will indulge employees who are absent on non-FMLA leave (allowing Pivacek/Leavy 9+ months of accrued sick and vacation leave), it will fire an employee absent on FMLA leave at its earliest opportunity, even if the employee (Mellen) then had 175 days of sick and vacation leave accrued to her).

*See also* note 8 *infra*. These common themes show that the University's relevancy objection is without merit.

In sum, therefore, the University's present effort is a ploy to have the Court sustain the University's initial bad faith concealment of *Pivacek/Leavy* documents. In fact, Mellen timely and appropriately made requests that encompassed the *Pivacek/Leavy* documents. Only because the University concealed responsive and relevant documents during and after the discovery deadline was Mellen compelled – upon learning of the documents following the close of discovery - to subpoena the Keeper of Records for the Law Office of Wendy A. Kaplan.

V. **THE DISCOVERY DEADLINE, AND PLAINTIFF'S ALTERNATIVE ARGUMENT TO EXTEND SUCH DEADLINE TO ACCOMMODATE THE PRODUCTION OF THE *PIVACEK/LEAVY* DOCUMENTS**

While defendants correctly identify the discovery deadline in this case as June 24, 2005, the deadline should not be read to bar plaintiff's development of other evidence after the discovery deadline, especially when the period between the discovery deadline and the scheduled trial is as long as in the present case (18 months, running from June 2005 until December 2006). *Accord Rice v. United States*, 164 F.R.D. 556, 557-558 (N.D.Okla. 1995)(a discovery cut-off does not bar a party from conducting an investigation for impeachment material).

10

Also, Rule 45 does not recognize the expiration of a discovery deadline as a basis for a motion to quash. *See also Williams v. Weems Community Mental Health Center*, 2006 WL 905955, *1 (S.D.Miss. 2006)(Rule 45 does not recognize the discovery deadline as a cognizable basis for quashing a subpoena, although in the appropriate case the motion may be treated as a motion for protective order).

In addition, Rule 45's "subpoena *duces tecum* is the only way to compel a nonparty to produce documents or other materials," see Wright & Miller, Federal Practice and Procedure, s. 2456 (1982 ed. with 2006 supp.), and such Rule does not contain any time limitation. *See Smith v. Midland Brake*, 162 F.R.D. 683 (D.Kan. 1995)(refusing to quash subpoena even though discovery deadline had passed). *See also RLS Associates v. United Bank of Kuwait*, 2005 WL 578917, *6-*7 (S.D.N.Y. 2005)(trial depositions are permitted even after the discovery deadline has passed). *But see Alper v. United States*, 190 F.R.D. 281, 283 (D.Mass. 2000)(Neiman, U.S.M.).

The two citations defendants offer the Court regarding the discovery deadline, *see* defendants' memorandum, at p. 3, are not helpful to the University's Motion. Defendants claim that in *Down Easy (sic) Energy Corp. v. Niagara Fire Ins. Co.*, 176 F.3d 7 (1999), the First Circuit Court of Appeals upheld the denial of a motion to reopen discovery filed 8 months after the discovery deadline. *Down East*, however, involved a party's attempting to reopen discovery, (a) against the opposing party (not, as here, against a non-party), (b) because the opposing party had been allowed, in the moving party's view, to substantively amend its theory of the case just 3 weeks before trial. The First Circuit denied the request because it came so close to start of trial, and because the party against whom additional discovery was sought had *not* changed its theory of its case. *Id.* at 13.

11

Defendants' other citation, *U.S. v. Sayer*, 450 F.3d 82, 90 (1st Cir. 2006), fares no better. In *Sayer*, a mortgage foreclosure action against a *pro se* Maine farmer, the Court of Appeals – in a dispute disposed of by summary judgment - deferred to the discretionary judgment of the District Court regarding the regulation of discovery. *Id.* at 89-90. There, the District Court had rebuffed the *pro se* defendant's effort to re-open discovery against the United States at a time the government's summary judgment motion was pending, because the defendant had "no well-grounded basis for suspecting the government accounts are wrong." *Id.* at 90.

In any case, the critical distinction between the instant matter and the cases cited by defendants is that the party resisting discovery based on the discovery deadline in both *Down East* and *Sayer* acted with clean hands. In contrast, defendants here invoke the discovery deadline only after they concealed relevant documents requested by Mellen during the discovery period. *Accord ATD Corp. v. Lydall Inc.*, 159 F.3d 534, 550-1 (Fed.Cir. 1998)(a party who fails to disclose relevant information prior to the discovery deadline may be sanctioned if after the deadline the party seeks to use such information).

## VI.   CONCLUSION

For these reasons, Mellen submits that the University should not be permitted to invoke the discovery deadline to prevent a third-party's disclosure of documents that the University should have disclosed during the discovery period. For attempting to do so, defendants should be sanctioned.

Alternatively, Mellen respectfully requests that the Court re-open the discovery period so that plaintiff may obtain the documents subpoenaed from the Law Office of

Wendy A. Kaplan. This re-opening will not prejudice the defendants, and will not cause the scheduled December 2006 trial date to be postponed.

The plaintiff, Linda Mellen, by her attorney,

Harry C. Beach BBO#547893
**Law Offices of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
Office: 781.255.5573
Cell: 617.968.4531
HBeach@HarryBeach.com

September 20, 2006

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) overnight
on  September 20, 2006
Signed: _____

13