

**Boston University**
**School of Medicine**

715 Albany Street
Boston, Massachusetts
02118-2526
Tel: 617 638-5300
Fax: 617 638-5258

Aram V. Chobanian, M.D.
Provost, Medical Campus
Dean, School of Medicine
John I. Sandson Distinguished
Professor of Health Sciences

March 7, 2002

Ms. Linda Pivacek
c/o Ms. Wendy A. Kaplan, Esq.
18 Tremont Street, Suite 704
Boston, MA 02108



RECEIVED MAR 0 8 2002

Dear Ms. Pivacek:

In mid October, 2001, I received an affidavit that your attorney had provided to the Office of the General Counsel in which you alleged, among other things, that Dr. Valeri had threatened your life, that you were in immediate fear for your physical safety, and that you believed Dr. Valeri had the potential to commit violent acts in the workplace.

I was extremely concerned by these allegations and took actions that I deemed appropriate to protect your safety and the safety of other members of the University community while your allegations were being investigated. Among other things, I asked the Office of the General counsel to speak with current and former members of the Naval Blood Research lab to see if other employees would corroborate your allegations regarding threats of physical harm.

Erika Geetter of the Office of the General Counsel has reported back to me concerning her investigation. It appears that none of the employees with whom she spoke actually heard Dr. Valeri making such threats. Dr. Valeri has also denied that he ever threatened physical violence against you. I have spoken with Dr. Valeri and reviewed the report prepared by Dr. Schouten, a psychiatrist who evaluated Dr. Valeri's risk of violence, and have concluded that, based on the information presently known to the University, Dr. Valeri does not represent a risk of violence to you or other members of the University Community. You have also charged Dr. Valeri with sex and age discrimination in your complaint to the Massachusetts Commission Against Discrimination. The University has responded to those allegations in its Position Statement, filed with the MCAD on February 21, 2002, finding them to be without merit.

My conclusion that Dr. Valeri does not pose a risk of violence in the workplace does not mean that I condone Dr. Valeri's style of management. I am aware that Dr. Valeri can engage in behavior that some find overly-critical and abrasive. However, I believe that there is a difference between behavior that does not represent ideal management practices and behavior that includes threats of physical violence, which cannot be tolerated in the workplace. As a result of this investigation, I have determined that the University will more closely monitor Dr. Valeri's interactions with employees who fall under his supervision. Furthermore, Dr. Wilfred Lieberthal has agreed to act as the supervisor of all contract personnel performing on-site work at the lab. Taking into account the present staffing of the lab and these safeguards for contract employees, I have determined that there is no need to remove Dr. Valeri as Director of the Naval Blood Research Lab at this time.

I understand that you went out of work on sick leave on October 10, 2001, based on your therapist's advice that working at the Lab was detrimental to your health. Your attorney has

indicated to Ms. Geetter that there are no circumstances under which you will return to work for Dr. Valeri, but if your position on this point has changed, please let me know. The Office of Personnel has informed me that the University allows employees in your classification to accrue 130 days of sick leave and that you will exhaust your accrued sick leave on April 25, 2002. If your treating physician believes that you are still unable to work at the present time, it is appropriate for you to continue to use your sick leave until April 25, provided that you supply George Snowdon of the Office of Personnel with appropriate support from your doctor of your continued inability to work. Mr. Snowdon has informed me that, as of March 15, 2002, the University will deem any further absence due to illness to be leave taken under the Family Medical Leave Act (FMLA), and he will send you a notice to that effect.

I have also been informed that you have accrued the maximum of fifty (50) days of vacation leave. If you use up your accrued sick leave while on FMLA leave, you will be required to use any accrued vacation time for the balance of that leave.

You are certainly free to seek another position at Boston University – either on the Medical Campus or the Charles River Campus -- and I am sure that the Office of Personnel will assist you in that endeavor any way it can. However, if, by the end of your FMLA leave, you are not successful in finding another position or are not approved for another form of leave, such as long term disability or an unpaid medical leave of absence, the University will have no choice but to terminate your employment at that time.

If you have any questions concerning the above, or would like to meet with me personally to provide me with more information or to discuss any matters pertaining to your present situation, please let me know. I would like to find a solution to this situation that is fair and appropriate to all concerned.

Sincerely,

Aram V. Chobanian, M.D.
Dean and Provost, Medical Campus
Boston University School of Medicine

cc.   Wendy Kaplan, Esq.
      Robert Sullivan, Esq.
      Erika Geetter, Esq.
      Dr. C. Robert Valeri
      George Snowdon