Case 1:04-cv-10644-MEL   Document 51-6   Filed 09/21/2006   Page 1 of 5

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss. | SUPERIOR COURT DEPARTMENT<br>OF THE TRIAL COURT<br>CIVIL ACTION NO. 02-2294 |

LINDA PIVACEK and )
MARILYN LEAVY, )
　　　　　　　　　　　　)
　Plaintiffs, )
　　　　　　　　　　　　)
　　vs. )
　　　　　　　　　　　　)
TRUSTEES OF BOSTON UNIVERSITY, )
and C. ROBERT VALERI, M.D., )
　　　　　　　　　　　　)
　Defendants. )

## AFFIDAVIT OF ERIKA GEETTER, ESQ.

I, Erika Geetter, do hereby depose as follows:

1. I have been a member in good standing of the Bar of the Commonwealth of Massachusetts since 1997, the Bar of Washington D.C. since 1993, and the Bar of the State of Tennessee since 1991.

2. I have been employed as an Associate General Counsel in the Office of the General Counsel at Boston University since 1996.

3. I represent Defendant Trustees of Boston University in the above-captioned case. My co-counsel in this matter is Lawrence Elswit, Esq., who is also an Associate General Counsel in the University's Office of the General Counsel,

4. On approximately October 22, 2001, Mr. Elswit provided me with a letter that he had received from Attorney Wendy A. Kaplan, who represents the plaintiffs in the above-captioned case. Ms. Kaplan's letter stated that she was representing Plaintiffs in their

claims against their supervisor, Dr. C. Robert Valeri, an employee of Boston University. Mr. Elswit informed Ms. Kaplan that, because he was preparing for a trial, I would represent Boston University in connection with her clients' claims.

5.   I brought Kaplan's letter and the allegations of Pivacek and Leavy to the attention of Dr. Aram Chobanian, Dean of the Boston University School of Medicine, and the individual to whom defendant Dr. Valeri ultimately reports. I informed Dean Chobanian that I would be representing the University in connection with these claims. Dean Chobanian requested that I investigate the allegations against Dr. Valeri, interview members of his staff, and locate a psychiatrist who could assess whether Dr. Valeri posed a threat to the safety or well-being of any member of the Boston University community and whether, with or without intervention, Valeri could control his behavior. Dean Chobanian and I both understood that I would inform him directly of the results of my investigation and provide him with legal advice based on the investigation.

6.   On behalf of the University, I engaged Dr. Ronald Schouten ("Schouten"), a psychiatrist and Director of the Law and Psychiatry Service at Massachusetts General Hospital, to examine Dr. Valeri. At the time I engaged Dr. Schouten, I knew that Pivacek and Leavy were likely to file suit against the University and/or Dr. Valeri. I also anticipated that Dr. Schouten would serve as the University's expert witness at trial.

7.   Dr. Schouten conducted a psychological evaluation of Dr. Valeri on November 7, 2001. I corresponded with Dr. Schouten before and after the evaluation. I provided him with information about Pivacek and Leavy's allegations, the University's actions, and

additional information about Dr. Valeri. In mid-November, Dr. Schouten prepared a report for the University based on his evaluation of Dr. Valeri.

8. On December 3, 2001, Pivacek and Leavy filed charges at the MCAD, alleging age and sex discrimination and retaliation. They named both the University and Dr. Valeri as defendants.

9. Throughout the Fall of 2001 and Spring of 2002, I provided legal advice to Dean Chobanian regarding, first, the threat of litigation, and later the actual litigation brought by the plaintiffs. My advice was based in part, upon my review of Dr. Schouten's assessment, and on the investigation of the plaintiff's claims that I had undertaken in response to Ms. Kaplan's first letter to the University in October of 2001.

10. At no time has there been a distinction between the investigation that I was conducting and the legal advice that I was giving and continue to give in connection with my investigation. As a result, I believe that my communications to Dean Chobanian and other University officials are protected by attorney client privilege, and that the documents I produced are properly classified as attorney-work product.

11. On May 23, 2002, Plaintiffs Pivacek and Leavy filed suit in state court, naming the University and Valeri as defendants. On May 24, 2002, the University was served with Plaintiffs' summons and complaint as well as with Notice of six (6) depositions including my deposition, scheduled for July 31, the deposition of my co-counsel, Lawrence Elswit, scheduled for August 1, 2002, and the deposition of Dr. Ronald Schouten, scheduled for June 24, 2002. Ex. 1. In a letter to me dated June 21, 2002, the plaintiffs' attorney indicated that "our intent is to depose counsel concerning prior

3

investigations arising from complaints about Dr. Valeri as well as the investigation of plaintiffs' complaints."

12. On or about July 12, 2002, Plaintiffs served a deposition subpoena duces tecum on Schouten requiring his appearance at a deposition on July 24, 2002. The subpoena further lists documents that Dr. Schouten is requested to bring with him to the deposition, including his report to the University and my communications with him. Ex. 2.

13. I am not aware of information I possess related to my investigation of Plaintiffs' claims that is not subject to the attorney-client or work-product privilege. As a result, I do not believe that it is appropriate for me to be deposed in connection with this case.

14. My communications to Dr. Schouten, which contain my mental impressions concerning the subject matter of this litigation, are attorney work product, and I believe that Dr. Schouten's report is also protected by the work product privilege, as Dr. Schouten prepared the report with knowledge of the likelihood of litigation.

Signed under the pains and penalties of perjury this 2nd day of July, 2002.

_____
Erika Geetter