UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA MELLEN, <br><br> Plaintiff, <br><br> v. <br><br> TRUSTEES OF BOSTON UNIVERSITY AND FRANCES A. DROLETTE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 04-10644-MEL <br> ) <br> ) <br> ) <br> ) <br> ) |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO QUASH SUBPOENA AND FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff's opposition to Defendants' Motion To Quash Subpoena – though full of sound and fury – does not address the central issue presented by Defendants' motion: the relevance of the documents sought from a third-party long after the close of discovery.

There is a single issue remaining in this case, namely, whether Defendants improperly retaliated against Plaintiff for taking FMLA leave when they determined that she had resigned when she failed to return from FMLA leave. The Court has already entered judgment for Defendants on the remaining claims in Plaintiff's complaint, including claims that Plaintiff did not receive all of the leave she was due under the FMLA and the Massachusetts counterpart, the Small Necessities Leave Act. *See* Docket Nos. 31 and 35. The trial of this issue is scheduled to begin on December 11, 2006.

The litigation against the University by Linda Pivacek and Marilyn Leavy (the *Pivacek/Leavy* Litigation) has no bearing on that issue. As the Complaint in that case makes clear, there were a number of serious and dramatic allegations in that case, but neither employee

alleged a violation of the FMLA. Plaintiff's Opposition, Tab 1 (the "Complaint"). Ms. Pivacek and Ms. Leavy alleged, among other things, that their supervisor, C. Robert Valeri, engaged in blatant and offensive discrimination on the basis of race, religion and gender. Complaint ¶¶ 21-23. The plaintiffs in that case alleged that when they complained about Dr. Valeri's conduct he threatened both employees and that they took these threats to be threats to their lives. Complaint ¶¶ 24-33. Both employees left work on sick leave because, they claimed, working under Dr. Valeri was detrimental to their health. Plaintiff's Opp. Tab 2 at p. 1. The Complaint sets forth five counts: Employment Discrimination in violation of M.G.L. ch. 151B (Count I); Aiding and Abetting Discrimination (Count II); Retaliation in violation of M.G.L. ch. 151B (Count III); Violation of Civil Rights (M.G.L. c. 12, § 11I) (Count IV); and Intentional Infliction of Emotional Distress (Count V). There is no claim for violation of the FMLA or retaliation associated with FMLA leave.

There is one mention of FMLA leave in paragraph 66 of the Complaint. The University placed Ms. Pivacek and Ms. Leavy on FMLA leave and the employees alleged that "BU retaliated against plaintiffs by stating that it was placing them on Family Medical Leave Act leave for twelve weeks." Complaint ¶ 66. In other words, Plaintiffs in that case made no claim that the University retaliated against them for *taking* FMLA; their claim is that the University retaliated against them for making allegations of race and gender discrimination by *placing* them on FMLA leave rather than sick leave.

Plaintiff also appears to suggest that the *Pivacek/Leavy* Litigation may bear on Ms. Mellen's claims because Ms. Pivacek and Ms. Leavy, like Ms. Mellen, had an abundance of unused sick and vacation time. There is no dispute that Ms. Mellen had unused sick and vacation time, but she never asked to extend her FMLA leave by using sick or vacation time. As

this Court has already determined, Ms. Mellen's leave ended on November 18 as a matter of law and she was required to return to work on November 19. Docket Nos. 31 and 35. The amount of sick and vacation time Ms. Mellen may have accrued during her career has no bearing on whether the University's decision to accept her resignation when she did not return was made for legitimate or for retaliatory reasons. Even if it did, the situation alleged by Ms. Pivacek and Ms. Leavy – gory though they may be – are entirely different from the Plaintiff's and have no bearing on her claim.

Sordid details about other employees' allegations are unlikely to be admissible unless they are sufficiently similar. When examining the circumstances of Ms. Mellen and the circumstances alleged by Ms. Pivacek and Ms. Leavy, no "prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir. 1999). Ms. Pivacek and Ms. Leavy alleged that their supervisor praised Hitler, Complaint ¶ 21, said that old people, like old horses, should be sent to the "glue factory," *id.*, and that women were "controlling bitches" who should be "put in their place." *Id.* They allege that their supervisor threatened to "get even" with the employees for complaining about these statements by killing them. Specifically, they allege that he said "I'm gonna get even! You're gonna be dead!" Complaint ¶ 24, he told Ms. Pivacek he would "bury" her, *id.* at ¶ 28, and he told Ms. Leavy that he would "hang her." *Id.* at ¶ 28. The employees alleged that their supervisor expressed his admiration for Tony Soprano of *The Sopranos* because he knows how to "get even" with his enemies by "shooting them in the back of the head," Complaint ¶ 31, and for Machiavelli because he understood that "you can only motivate people through fear. . . . Then if they don't perform you kill them. You shoot them." *Id.* at ¶ 32. It is obvious why Plaintiff might want to tar the University with these allegations

from an unrelated case. But these allegations are entirely irrelevant and, obviously, highly prejudicial. The discovery is untimely and inappropriate and the Court should not permit it.

Finally, the University did not withhold documents from discovery as Plaintiff has alleged. Plaintiff's request – which she carefully avoids quoting – sought the following:

> All documents relating to or otherwise identifying legal claims or complaints made by University employees against the University for alleged violations of the FMLA and/or SNLA during the period 1995 – present.

Plaintiff's Opposition, Tab 6 at p. 4, Request No. 9. As discussed above, the Complaint filed in the *Pivacek/Leavy* Litigation made no claim of violation of the FMLA or SNLA. The University produced the two complaints filed that assert violations of the FMLA. *See* Plaintiff's Opposition, Tab 7 (alleging "a denial of Ms. Szabo's rights under the Family and Medical Leave Act of 1993") and Tab 8 (removing case to federal court where Mr. Walsh asserted "that defendant engaged in conduct in violation of rights secured by the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq."). If Plaintiff had cause to believe that Defendants failed to respond adequately to discovery served in this case, Plaintiff should have sought to reopen discovery in *this* case and compel Defendants to respond appropriately. Plaintiff's attempt to thwart that process by serving a third-party subpoena on counsel for parties in a separate action should be rejected for the reasons set forth in Defendants' Memorandum.

## CONCLUSION

WHEREFORE, Defendants Trustees of Boston University and Frances A. Drolette respectfully request that the subpoena be quashed and that the Court enter a protective order to bar the production of the documents requested by Plaintiff's subpoena.

TRUSTEES OF BOSTON UNIVERSITY
AND FRANCES A. DROLETTE,
By their attorneys,


/s/Crystal D. Talley
Lawrence S. Elswit, BBO # 153900
Crystal D. Talley, BBO # 633759
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
(617) 353-2326

Dated:  September 26, 2006